93 A.3d 442

COMMONWEALTH of Pennsylvania, Appellant

v.

Jay Lee WALTER, Sr., Appellee.

Supreme Court of Pennsylvania.

Argued Nov. 28, 2012.

Decided Feb. 18, 2014.

524

526

Lauren Elizabeth Sulcove, Matthew Drew Fogal, Franklin County District Attorney's Office, Chambersburg, for Appellant.

Stephen D. Kulla, Kulla, Barkdoll, Ullman and Painter, P.C., Waynesboro, for Appellee.

Brian Clark Bornman, Chambersburg, for Amicus Curiae Pennsylvania Children and Youth Solicitors Ass'n.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice TODD.

In this appeal by the Commonwealth, we consider whether the Superior Court erred in holding the trial court was required to determine that the child victim was competent to testify under Pa.R.E. 601 prior to admitting her out-of-court statements into evidence pursuant to the Tender Years Hearsay Act ("TYHA"), 42 Pa.C.S.A. § 5985.1. We hold that a determination of a child's competency pursuant to Rule 601 is not a prerequisite to the admission of hearsay statements

under the TYHA, and, therefore, we reverse the decision of the Superior Court and remand for further proceedings.

On October 17, 2008, Franklin County Children & Youth Services ("CYS") received an anonymous call regarding the welfare of A.W. (hereinafter "victim"), the four-year-old daughter of Appellee Jay Lee Walter.[1] A CYS caseworker, Leann Briggs, asked Appellee and his wife, the victim's mother, to bring the victim to the agency, so that Briggs could verify the child's safety. During an interview Briggs conducted with the victim, the victim indicated that she was afraid of Appellee because of "Chuckie," a name she used to refer to Appellee's penis. The victim told Briggs that Chuckie moves back and forth on top of her, and that Chuckie goes inside of her body, specifically, her vagina. The victim also told Briggs that Appellee made the victim take her clothes off, lie down, and then forced the family dog, "Baby," to lick the victim's vagina. Following Briggs' interview, the victim was placed in foster care on an emergency basis. Pennsylvania State Police Trooper Courtney Pattillo began an investigation, during which time she interviewed various witnesses, including Appellee. On October 20, 2008, Appellee was charged with rape of a child,[2] two counts of involuntary deviate sexual intercourse with a child,[3] indecent assault,[4] and endangering the welfare of a child.[5]

Thereafter, the Commonwealth filed a motion seeking to introduce certain statements made by the victim to third parties into evidence pursuant to the TYHA. The TYHA provides, in relevant part:

> (a) General rule.—An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing any of the offenses enumerated in 18 Pa.C.S. Chs. 25 (relating to

1. The victim was one month and several days shy of her fifth birthday.
2. 18 Pa.C.S.A. § 3121.
3. 18 Pa.C.S.A. § 3123.
4. 18 Pa.C.S.A. § 3126.
5. 18 Pa.C.S.A. § 4304.

criminal homicide), 27 (relating to assault), 29 (relating to kidnapping), 31 (relating to sexual offense), 35 (relating to burglary and other criminal intrusion) and 37 (relating to robbery), not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

(1) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) the child either:

(i) testifies at the proceeding; or

(ii) is unavailable as a witness.

(a.1) Emotional distress.—In order to make a finding under subsection (a)(2)(ii) that the child is unavailable as a witness, the court must determine, based on evidence presented to it, that testimony by the child as a witness will result in the child suffering serious emotional distress that would substantially impair the child's ability to reasonably communicate. In making this determination, the court may do all of the following:

(1) Observe and question the child, either inside or outside the courtroom.

(2) Hear testimony of a parent or custodian of any other person, such as a person who has dealt with the child in a medical or therapeutic setting.

42 Pa.C.S.A. § 5985.1(a), (a.1). The Commonwealth also sought to have the victim testify by teleconference pursuant to 42 Pa.C.S.A. § 5945.

At a hearing on January 30, 2009 ("TYHA Hearing"), the Commonwealth conducted an *in camera* evaluation of the victim, who by then had turned five. The trial court asked the victim a number of questions, including questions regarding her name, age, and living arrangements, and she appeared to give appropriate answers. However, when the Commonwealth asked the victim various questions related to her

understanding of truth and lies, the victim gave a number of nonsensical or bizarre answers.[6]

**6.** For example, at one point during the hearing, the following exchange occurred:

Q. Okay. [A.W.], can you tell us how old you are?
A. (Indicating five)
Q. You're putting your hand up and all five fingers are up?
A. Yep.
Q. Does that mean you are five years old?
A. Yeah.
Q. Okay.
A. Ho ho ho.
Q. Speak up a little bit, okay. Can you?
A. Santa Clause. [sic]
Q. What about Santa Clause? [sic]
A. Ho ho ho.

N.T. Hearing, 1/30/09, at 17. The following exchange occurred later in the hearing:

Q. [A.W.], if I told you that there was a kitty cat standing on top of my head would that be the truth or a lie?
A. That's the truth.
Q. That's the truth. Is there a kitty cat standing on top of my head? Say yes or no.
A. Yes.
Q. There is. If I told you that Gillian sitting next to you right now, that Gillian was a doggy, would that be the truth or a lie?
A. Truth.
Q. That's the truth or a lie?
A. Truth.
Q. Is telling a lie a good thing or bad thing?
A. Good thing.
Q. A good thing. Is Ms. Gillian a dog?
A. Yeah.
Q. Are you telling the truth or are you playing pretend?
A. The truth.
Q. Does she bark?
A. Yeah, she—woof woof.
 Ms. [Gillian Mazzone]: We have pretended to be dogs.
Q. Have you ever pretended to be a dog with Ms. Gillian?
A. Yes.
Q. If I told you that Ms. Gillian is Bugs Bunny would that be the truth or a lie?
A. Truth.
Q. She's Bugs Bunny?
A. Yeah.
Q. [A.W.], do you know that it's important to tell the truth?
A. Yeah.

 * * *

Q. What can happen if you didn't tell us the truth? If you told us a lie today what would happen?
A. I got new underwear.

The Commonwealth presented the testimony of the CYS caseworker, Briggs, as well as testimony by the victim's foster mother ("Foster Mother"), with whom the victim had been living since October 17, 2008. Foster Mother testified regarding the emotional effect court hearings and appearances had on the victim; specifically, Foster Mother testified that the victim became "very unsettled" and "very emotional" in the days following an appearance at the courthouse, and would suffer from nightmares for several days after attending court proceedings. N.T. Hearing, 1/30/09, at 42. On one occasion, immediately after a preparatory session with the prosecutor, the victim smeared feces on the walls of the house. Foster Mother stated that, in her view, requiring the victim to testify in front of Appellee would traumatize the victim.

Foster Mother also testified regarding an incident that occurred at the end of October 2008, shortly after the victim moved in with the family. According to Foster Mother, the victim was on the toilet and Foster Mother was cleaning up after her when the victim suddenly asked, "is there anymore blood?" *Id.* at 39. When Foster Mother asked the victim what she meant, the victim replied, "there was blood when Daddy Jay sticks his finger in there." *Id.* Foster Mother recounted another occasion on which she was awakened as the victim screamed and ran into Foster Mother's bedroom. The victim was crying and shaking and stated that she was "afraid that daddy was going to bring Chuckie to her room," and that "Chuckie bites." *Id.* at 40. The victim told Foster Mother that "Chuckie is daddy's body's part," and drew a picture which indicated that that "Chuckie" was her father's penis. *Id.*

The Commonwealth next presented the testimony of Angela Morris, a family friend of the Walters. Morris testified that, around October 2007, she and her son were at a child's birthday party at which the victim was also a guest. During the party, the victim grabbed Morris' son's "private part." *Id.* at 50. When Morris confronted the victim about the behavior,

*Id.* at 455–56.

the victim responded, "it was okay to do that;" "daddy says it's okay;" and that she "touch[es] daddy there." *Id.* at 50–51.

Diane Bulger, a neighbor and former friend of the family, also testified at the TYHA hearing. Bulger testified that, in October 2008, she went to the Chambersburg Mall with her son, the victim, Appellee, and Appellee's wife. Bulger testified that Appellee took the victim into the men's bathroom at the mall, and when the victim exited the bathroom, she was crying and stated, "don't let daddy hurt me down below." *Id.* at 61.

Another friend of the family, Rebecca Alkire, testified that, in May 2008, while she was babysitting the victim, she was in the process of changing the victim's diaper when the victim stated, "watch [your] fingers." *Id.* at 64. Concerned about the statement, Alkire later discussed it with the victim's mother, who explained that she and Appellee were trying to train the victim to use this phrase if someone tried to touch her in her vaginal area. *Id.* Alkire recounted another time, in July or August 2008, when the victim was watching cartoons at Alkire's house and Alkire tickled the victim. The victim immediately became tense, and Alkire asked the victim if anyone had ever touched her. The victim replied that her daddy touches her "pussy" with his "dick." *Id.* at 65.

On February 23, 2009, the trial court entered an order holding the victim was competent to testify, but was unavailable as a witness because testifying would cause her serious emotional distress that would substantially impair her ability to reasonably communicate to the jury. Trial Court Order, 2/23/09, at 2. The court, however, instructed the parties that the court's finding of the victim's competence at the TYHA hearing did not preclude Appellee from challenging the child's competency at later stages of the proceedings. The court further concluded the statements the victim made to the five adult witnesses (Briggs, Foster Mother, Bulger, Morris, and Alkire) who testified at the TYHA hearing, contained sufficient indicia of reliability to be admissible under the TYHA. Finally, the court granted the Commonwealth's motion to

allow the victim to testify by contemporaneous alternative method.

A preliminary hearing was held on March 31, 2009, before a magisterial district judge ("MDJ") and the victim was called to testify outside of Appellee's presence. However, following questioning of the victim, the MDJ concluded the victim was not, in fact, competent to testify because, *inter alia*, she repeatedly stated that it was a "good thing" to tell a lie. N.T. Hearing, 3/31/09, at 10. Nevertheless, the MDJ proceeded with the preliminary hearing, and the prosecutor called the same witnesses who previously testified at the TYHA hearing.

On July 19, 2010, a jury trial commenced, and the trial court permitted a defense witness to read into the record the victim's testimony from both the TYHA hearing and the preliminary hearing. The court also permitted the five adult witnesses to testify pursuant to the TYHA regarding the statements made by the victim. The jury convicted Appellee of all charges, and the trial court sentenced him to an aggregate term of 30 to 60 years incarceration. Appellee also was ordered to undergo an evaluation by the Sexual Offender Assessment Board, and, ultimately, was determined to be a sexually violent predator.

Appellee appealed his judgment of sentence. The Superior Court, in an unpublished memorandum opinion, vacated Appellee's judgment of sentence and remanded for further proceedings on the grounds that the trial court erred in admitting the victim's out-of-court statements pursuant to the TYHA after it had determined the victim was not competent to testify at the preliminary hearing. *Commonwealth v. Walter*, 1829 MDA 2010 (Pa.Super. filed Dec. 9, 2011). The court explained:

> [T]he threshold issue of whether A.W. was a competent witness whose statements were admissible on any basis appears to have been overlooked. This question requires our consideration of the interaction between provisions of the [TYHA] that provide for admission of out-of-court statements of a child witness as hearsay evidence, *see* 42 Pa.C.S.

§ 5985.1(a)(2)(ii), and Pennsylvania Rule of Evidence 601(b), which requires disqualification of a child witness for factors related to immaturity. We conclude that although the [TYHA] permits admission of hearsay testimony to convey a child victim's out-of-court statements where the child is "unavailable" pursuant to subsection 5985.1(a)(2)(ii), a determination of unavailability under that section is not a substitute for the requisite evaluation and finding of competence. In short, the [TYHA] ... presupposes that the witness has been determined to be competent within the meaning of Pa.R.E. 601 at the time he or she made the statements in question. Under no circumstances does a finding of unavailability under the [TYHA] transmute testimony not competent under Pa.R.E. 601 into admissible evidence capable of sustaining a criminal conviction.

*Walter*, 1829 MDA 2010 at 9–11 (footnote omitted).

In a concurring opinion, Judge Robert Freedberg concluded the trial court's initial determination at the TYHA hearing that the victim was competent was a clear abuse of discretion, and, furthermore, that "[t]he erroneous finding of competence impacted on the conclusion that there were sufficient indicia of reliability to admit the child's out-of-court statements." *Walter*, 1829 MDA 2010 at 1 (Freedberg, J., concurring).

Judge Judith Olson filed a dissenting memorandum, wherein she concluded the majority had conflated the hearsay exception of the TYHA with Rule 601(b) of the Pennsylvania Rules of Evidence, which lists the circumstances under which a witness may be deemed incompetent to testify. Judge Olson disagreed with the majority's determination that the trial court had abused its discretion in admitting the victim's out-of-court statements pursuant to the TYHA without first determining the victim was competent.

Subsequently, the Commonwealth filed a petition for allowance of appeal, and, on June 27, 2012, this Court granted the Commonwealth's petition with respect to the following issues:

1. Did the Superior Court err in holding that, before a trial court may admit a child's statements pursuant to the Ten-

der Years [Hearsay] Act, the court must first conclude that the child is competent to testify?

2. Did the Superior Court err in determining that the trial court abused its discretion by admitting the child victim's out-of-court statements under the Tender Years [Hearsay] Act, where the trial court found sufficient indicia of reliability such that the child was likely to have been telling the truth when the statements were made?

*Commonwealth v. Walter,* 616 Pa. 163, 46 A.3d 1286 (2012) (order).

 An appellate court's standard of review of a trial court's evidentiary rulings, including rulings on the admission of hearsay and determinations of witness competency, is abuse of discretion. *Commonwealth v. Delbridge,* 578 Pa. 641, 855 A.2d 27, 34 n. 8 (2003). However, issues of statutory interpretation are questions of law, over which our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Sinnott,* 612 Pa. 321, 30 A.3d 1105, 1107 (2011).

The Commonwealth first argues that the Superior Court erred in holding that a child must be deemed competent to testify at trial before a trial court may admit the child's out-of-court statements into evidence under the TYHA. The Commonwealth observes that the TYHA is "utterly silent" with regard to the competency of a child witness, and suggests that, "if the legislature had intended that every child be subject to a competency examination before her statements were evaluated for reliability, it would have written this into the statute." Commonwealth Brief at 15. With regard to the Superior Court's reliance on Rule 601 of the Pennsylvania Rules of Evidence, the Commonwealth asserts that Rule 601(b) applies only to witnesses who actually testify, and that, because a victim who is deemed "unavailable" to testify due to emotional distress will not testify, that witness is not subject to the criteria of Rule 601(b).

The Commonwealth further avers that, to its knowledge, the only case in which a Pennsylvania court has suggested that a child's competency may be considered a relevant factor in

determining the reliability of the child's statement is *Commonwealth v. Bean*, 450 Pa.Super. 574, 677 A.2d 842 (1996), wherein the Superior Court stated:

> In *Idaho v. Wright*, [497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990) ], the Supreme Court refused to find that a child's out-of-court statements are *per se* unreliable based on the fact that the child is deemed incompetent to testify at trial. Nevertheless, a child's incompetency at [the] time of trial may be relevant to determining whether the child's earlier statements possessed "particularized guarantees of trustworthiness."

*Id.* at 846 n. 5. The Commonwealth thus maintains there is "currently no requirement that a child be deemed competent to testify before a trial court may evaluate the child's statements for reliability" under the TYHA. Commonwealth Brief at 16 (emphasis omitted).

Finally, as a policy matter, the Commonwealth argues that (1) importing a competency requirement into the TYHA will impose additional constraints on cases which are already difficult to prosecute, and (2) will result in disparate treatment of statements made by child victims and those made by adult victims, as "none of the other exceptions to the hearsay rule require that the declarant be competent before the statements may be deemed admissible." Commonwealth Brief at 16.[7]

Appellee, in arguing the Superior Court properly concluded the trial court abused its discretion by allowing the TYHA to act as a substitute for a determination of competency, first asserts that one of the cases upon which the trial court relied, *Commonwealth v. D.J.A.*, 800 A.2d 965 (Pa.Super.2002), actually supports Appellee's position rather than the Commonwealth's position. Specifically, Appellee submits that, in *D.J.A.*, the court interpreted Rule 601(b) to "require[ ] a court to determine a child's ability to perceive accurately both at the time of [the] competency hearing and at any other relevant time," and that the phrase "any other relevant time" includes

---

7. The Pennsylvania Children and Youth Solicitors Association filed an *amicus* brief in support of the Commonwealth. Therein, it echoes the same legal and policy arguments asserted by the Commonwealth.

the time during which the events occurred. Appellee's Brief at 10.

Appellee further argues that a trial court, in determining the competency of a witness, must consider (1) the witness's capacity to communicate, including an ability to understand questions and express intelligent answers; (2) whether the witness has the mental capacity to observe and remember the occurrence; and (3) whether the witness has a consciousness of the duty to speak the truth. *Id.* (citing, *inter alia, Commonwealth v. Bristow,* 372 Pa.Super. 48, 538 A.2d 1343 (1988)). Appellee maintains that, because the victim did not satisfy any of these requirements, "the testimony of the child" could not have provided "sufficient indicia of reliability." Appellee's Brief at 11.

Appellee additionally highlights "the complete lack of spontaneity and consistent repetition of the alleged victim's statements," and contends the trial court failed to follow the requirements of Rule 601(b)(1) because, "[a]t no time did the Court determine the child's 'ability to perceive accurately both at the time of the competency hearing and at any other relevant time.' ... 'Any other relevant time' necessarily includes the time during which the events the child is describing occurred." *Id.* (quoting *D.J.A.,* 800 A.2d at 971).

Finally, Appellee suggests that admitting statements of an incompetent person "without the ability to cross examine said person, as long as the person is unavailable ... would obviously create a[n] unabated stream of 'unavailable witnesses' statements in proceedings in direct contrast to established authority prohibiting hearsay and the tenet of the right to confront and cross[-]examine witnesses." *Id.* at 12.

As the arguments presented by the parties herein involve the interpretation of a statute, we are guided by the Statutory Construction Act ("SCA"). 1 Pa.C.S.A. §§ 1501 *et seq.* We are mindful that the object of all statutory interpretation is to ascertain and effectuate the intention of the General Assembly, *id.* § 1921(a), and the best indication of the legislature's intent is the plain language of the statute. When

the words of a statute are clear and unambiguous, we may not go beyond the plain meaning of the language of the statute under the pretext of pursuing its spirit. *Id.* § 1921(b). Only when the words of the statute are ambiguous should a reviewing court seek to ascertain the intent of the General Assembly through considerations of the various factors found in Section 1921(c) of the SCA. *Id.* § 1921(c).

■■ Preliminarily, it is important to recognize the difference between the two legal concepts at issue in this appeal—competency, and the hearsay exception of the TYHA. Competency relates to the "capacity of the witness to communicate, to observe an event and accurately recall that observation, and to understand the necessity to speak the truth. A competency hearing is not concerned with credibility. Credibility involves an assessment of whether or not what the witness says is true." *Delbridge,* 855 A.2d at 40 (citation omitted).

■ Generally, a witness is presumed competent to testify, and the burden falls on the objecting party to demonstrate that a witness is incompetent. *Id.* at 39–40. Under Pa.R.E. 601(b), a person may be deemed incompetent to testify if the Court determines that, because of a mental condition or immaturity, the person:

(1) is, or was, at any relevant time, incapable of perceiving accurately;

(2) is unable to express himself or herself so as to be understood either directly or through an interpreter;

(3) has an impaired memory; or

(4) does not sufficiently understand the duty to tell the truth.

Pa.R.E. 601(b).

■ However, where a child under the age of 14 is called to testify as a witness, the trial court must make an independent determination of competency, which requires a finding that the witness possess (1) a capacity to communicate, including both an ability to understand questions and to frame and express intelligent answers; (2) the mental capacity to observe

the actual occurrence and the capacity of remembering what it is that he or she is called to testify about; and (3) a consciousness of the duty to speak the truth. *Commonwealth v. Washington*, 554 Pa. 559, 722 A.2d 643, 646 (1998) (citing *Rosche v. McCoy*, 397 Pa. 615, 156 A.2d 307, 310 (1959)).

 Unlike a determination of competency, which pertains to a witness's capacity to testify, the TYHA concerns the admissibility of out-of-court statements made by a child victim or witness to third parties. The "admissibility of this type of hearsay is determined by assessing the particularized guarantees of trustworthiness surrounding the circumstances under which the statements were uttered to the person who is testifying." *Delbridge*, 855 A.2d at 45. To determine whether a child's out-of-court statements are admissible under the TYHA,

a trial court must assess the relevancy of the statements and their reliability in accordance with the test enunciated in *Idaho v. Wright, supra.* Although the test is not exclusive, the most obvious factors to be considered include the spontaneity of the statements, consistency in repetition, the mental state of the declarant, use of terms unexpected in children of that age and the lack of a motive to fabricate.

*Id.* at 47.

 With this in mind, we turn to the Commonwealth's specific argument that the TYHA does not require a determination of competency before a child's hearsay statements may be admitted into evidence. As noted previously, Section 5985.1(a) provides, *inter alia:*

An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing [certain enumerated offenses], *not otherwise admissible by statute or rule of evidence,* is admissible in evidence in any criminal or civil proceeding if:

(1) the court finds, in an *in camera* hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) the child either:

(i) testifies at the proceeding; or

(ii) is unavailable as a witness.

42 Pa.C.S.A. § 5985.1(a) (emphasis added). Under the plain language of the TYHA, there is no requirement that a child victim be deemed competent under Rule 601 before the child's statements may be admitted into evidence under the TYHA.[8]

■■■■■ Moreover, a child's competency to testify as a witness under Rule 601 is a distinct issue from the admissibility of a child's out-of-court statements under the TYHA. First, when a child is deemed unavailable as a witness under Section 5985.1(a)(2)(ii) of the TYHA, the child will not testify; thus, Rule 601 is not implicated. Additionally, the concerns underlying Rule 601 are not the same as those recognized by the TYHA. In *Rosche*, this Court explained the rationale behind the requirement of a determination of a child's competency:

[T]he issue is not to be determined merely because of the capacity of the witness at the time he is called to communicate his thoughts in terms of language. There must be (1) such capacity to communicate, including as it does both an ability to understand questions and to frame and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remembering *what it is* that she is called to testify about and (3) a consciousness of

---

**8.** Regarding Appellee's reliance on the Superior Court's decision in *D.J.A.* as support for his argument that a trial court must determine a child victim's competency prior to admitting the child's statements into evidence under the TYHA, we find such reliance to be misplaced. In *D.J.A.*, the Superior Court held that a trial court, in determining a child's competency to testify, must assess the child's "ability to perceive accurately both at the time of the competency hearing and at any other relevant time," including the time during which the alleged events occurred. 800 A.2d at 971. However, the Superior Court's statements in this regard were part of the court's discussion of the trial court's determination of the child victim's competency to testify; the court's statements did not pertain to the admissibility of the child's statements under a hearsay exception. Indeed, the Superior Court in *D.J.A.* addressed and rejected, in a separate discussion, the Commonwealth's argument that the trial court erred in refusing to admit into evidence statements the child victim made to her doctor pursuant to the hearsay exception of Pa.R.E. 803(4) (statements made for purpose of medical diagnosis or treatment).

the duty to speak the truth. These first two considerations are in some instances easily answered where a 7 year old witness is called upon to testify as to a very recent event, particularly where the testimony covers a simple and uncomplicated fact. The situation, however, is not the same where a 7 year old witness is called upon to testify what that witness saw when she was 4 years of age.

156 A.2d at 310 (emphasis original). We emphasized in *Rosche* that "capacity to communicate in terms of words . . . is meaningless unless supported by the capacity to note the occurrence at the time it happened and the ability to remember it." *Id.* at 310–11.

Thus, with respect to a child witness, one of the primary concerns Rule 601 is designed to address is a child's ability to *perceive and remember* events about which the child later testifies. Conversely, in determining whether out-of-court statements of a child contain "particularized guarantees of trustworthiness surrounding the circumstances under which the statements were uttered to the person who is testifying," *Delbridge*, 855 A.2d at 45, and, therefore, are admissible under the TYHA, the focus is on the truthfulness of the statements, which is assessed by considering the spontaneity of the statements; the consistency in repetition; the mental state of the child; the use of terms unexpected in children of that age; and the lack of a motive to fabricate. *See, e.g., Wright,* 497 U.S. at 821–22, 110 S.Ct. 3139.[9]

9. We recognize that *Wright* was decided in 1990, prior to the high Court's decision in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). In *Crawford,* the Court rejected the "indicia of reliability" test previously approved in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), as a violative of the principles of the Confrontation Clause, and held:

Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law-as does *Roberts,* and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.

*Crawford,* 541 U.S. at 68, 124 S.Ct. 1354. A statement is testimonial if, *inter alia,* it is made during an interrogation for which the primary

Although the high Court in *Wright* noted that a child's inability to communicate to the jury at the time of trial "might be relevant to whether the earlier hearsay statement possessed particularized guarantees of trustworthiness," it concluded that a *"per se* rule of exclusion would not only frustrate the truth-seeking purpose of the Confrontation Clause, but would also hinder States in their own 'enlightened development in the law of evidence.' " *Id.* at 825, 110 S.Ct. 3139. The *Wright* Court further rejected the respondent's contention that the child's out-of-court statements in that case were *per se,* or at least presumptively, unreliable, as a result of the trial court's finding that the child was incompetent to testify at trial. In so doing, the Court stated:

> Although Idaho law provides that a child witness may not testify if he "appear[s] incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly," the trial court in this case made no such findings. Indeed, the more reasonable inference is that, by ruling that the statements were admissible under Idaho's residual hearsay exception, the trial court implicitly found that [the victim], at the time she made the statements, was capable of receiving just impressions of the facts and of relating them truly.

*Id.* at 824–25, 110 S.Ct. 3139 (citation to statute omitted).

Accordingly, based on the plain language of the TYHA, and in light of the fact that the concerns underlying Rule 601 are distinct from those implicated in the hearsay exception of the TYHA, we hold that a child need not be deemed competent to testify as a witness in order for the trial court to admit the child's out-of-court statements into evidence pursuant to the TYHA.

purpose "was to establish or prove past events relevant to a later criminal prosecution." *Commonwealth v. Allshouse,* 614 Pa. 229, 36 A.3d 163, 175 (2012). Herein, Appellee did not challenge the victim's statements as testimonial. Accordingly, we need not address whether *Crawford* would preclude the admission of the victim's statements under the TYHA.

In its second issue, the Commonwealth contends that the Superior Court erred in holding the trial court abused its discretion by admitting the victim's out-of-court statements under the TYHA. As discussed *supra,* in holding the victim's hearsay statements were admissible under the TYHA, the trial court was required to find, and did find, that (1) the victim was unavailable as a witness and (2) her statements contained sufficient indicia of reliability. Initially, regarding the first factor, we note that the Superior Court, in holding the trial court erred in admitting the victim's statements into evidence pursuant to the TYHA, characterized the determination of the victim's competency as a "threshold issue." *Walter,* 1829 MDA 2010 at 9. As a result, the Superior Court did not address the trial court's ruling regarding the unavailability of the victim due to the fact that she would suffer emotional distress. Nevertheless, we agree with the Commonwealth that the record supports the trial court's determination that, under the TYHA, the victim was unavailable to testify.

Under the TYHA, an out-of-court statement of a child sexual assault victim or witness who is twelve years old or younger, is admissible into evidence in a criminal or civil proceeding if two requirements are satisfied. First, the trial court must find that the evidence is relevant and that the time, content, and circumstances of the statement provide sufficient indicia of reliability. Second, the child must either (1) testify at the proceeding, or (2) be deemed unavailable as a witness. 42 Pa.C.S.A. § 5985.1(a)(2)(i), (ii). In order for the child to be deemed unavailable to testify as a witness, "the court must determine, based on evidence presented to it, that testimony by the child as a witness will result in the child suffering serious emotional distress that would substantially impair the child's ability to reasonably communicate." *Id.* § 5985.1(a.1). In making this determination, the court may (1) observe and question the child, either inside or outside of the courtroom; and (2) hear testimony of the child's parent or custodian or any other person who has dealt with the child in a medical or therapeutic setting. *Id.* § 5985.1(a.1)(1), (2). The TYHA does

not require that a trial court's determination of unavailability be supported by expert testimony.

In the case *sub judice,* the court heard testimony from Foster Mother regarding the victim's behavior and demeanor following meetings or hearings dealing with the case. Foster Mother stated that the victim had nightmares for several nights after court appearances; that the victim became anxious and hid her face when she learned she had to attend court proceedings; and that simply being outside of the courthouse had a negative effect on the victim. The trial court explained that, in reaching its conclusion, "the Court found the testimony presented of the difficulties experienced by the child after testifying to be credible. These difficulties included but were not limited to severe negative reactions, nightmares, crying, and freezing up upon discussing the instances of abuse." Trial Court Opinion, 1/7/11, at 5. Based on the evidence of record, we find no error in the trial court's determination that the victim was unavailable to testify as a witness.

■■■ With regard to the second TYHA factor—whether the time, content, and circumstances of the victim's statement provided sufficient indicia of reliability—the Superior Court relegated its discussion to a footnote, in which the court opined that "a searching examination of the record reveals little indicia of reliability in A.W.'s statements," and stated:

This conclusion is best documented in the findings of [Child Abuse Nurse Specialist] Ellen M. Dyer. Although Dyer attempted to verify the presence of sexual abuse and explain away the absence of any abnormality in A.W.'s vaginal area, her testimony is profoundly exculpatory, undermining the Commonwealth's case and any contention that A.W.'s statements offer reliable evidence of sexual abuse. Indeed, Dyer's examination verified only "[n]on-specific vulvar redness and irritation likely associated with enuresis [i.e., bedwetting] and the use of pull-ups." Although Dyer conducted the examination four days after the report of the abuse, she reported that A.W.'s condition was "[o]therwise normal[,"] and that "[h]er hymenal edges were sharp and without clefts[,]" that her "[h]ymenal vasculature was uni-

form and normal in appearance[,]" and that "[h]er four-chette and perineum were normal." Medical History and Physical Examination Report dated 10/21/08, at 2–3. In view of these findings, A.W.'s most inflammatory state-ments, indicating that her father inserted "Chucky;" i.e., his penis, into her vagina and moved it back and forth, defies credibility; indeed, the notion that an adult male could vaginally rape a three-year-old in that manner leaving no signs of penetration whatsoever appears to us a physical impossibility. Accordingly, the record does not support the trial court's conclusion that A.W.'s statements possessed the requisite indicia of reliability.

Additionally, A.W.'s statements indicating pain or apprehen-sion after exiting the bathroom with her father or upon being changed by her foster mother are readily explained by the acknowledged occurrence of bed wetting and diaper rash. The extent to which witnesses to those statements would find them to be circumstantially reliable is entirely a function of what the witnesses *presumed* the circumstances to be. Indeed, prior to being informed of pending sexual abuse charges, witness Diane Bulger discounted the state-ments, as the circumstances under which A.W. made them appeared consistent with diaper rash. In truth, the state-ments indicate only that A.W. suffered discomfort. They shed no light whatsoever on the cause of that discomfort and therefore cannot be deemed reliable evidence of any-thing more than that.

*See id.* at 22–23 n. 9 (emphasis and alterations original).[10]

Based on the above, the Commonwealth argues that the Superior Court improperly considered factors that are not

---

10. The Superior Court failed to acknowledge that, when asked to reconcile her statements that she did not find any tearing or scarring in the victim's vaginal area with her conclusion that there was vaginal penetration, Dyer explained:

The vaginal area is the mucosa much like the inside of our mouth so that—let me back up just a second. There are two reasons. Either there is not physical harm in some way and if there is physical harm it has healed and the physical harm that's usually sustained is, like I said, mucous membrane which when we bite the inside of our mouth within 24, for sure 48 hours that mucosa is completely healed. We

relevant to a reliability analysis under the TYHA, and substituted its own opinion for that of the trial court. Commonwealth Brief at 21–22. We are constrained to agree. As the high Court explained in *Wright*,

[t]he presence of physical evidence of abuse, the opportunity of [the defendant] to commit the offense, and ... [a] corroborating identification, relate instead to whether other evidence existed to corroborate the truth of the statement. These factors ... are irrelevant to a showing of the "particularized guarantees of trustworthiness" necessary for admission of hearsay statements under the Confrontation Clause.

497 U.S. at 826, 110 S.Ct. 3139.

Thus, the Superior Court's opinion on the impact of Dyer's testimony, as well as the court's own speculation regarding the lack of physical evidence or possible alternative explanations for the victim's physical complaints, are irrelevant to a determination of whether the time, content, and circumstances of the victim's statements to witnesses other than Dyer provided sufficient indicia of reliability so as to be admissible under the TYHA.

The trial court explained the basis for its finding that the victim's out-of-court statements possessed sufficient indicia of reliability as follows:

[T]he child was particularly likely to be telling the truth when the child made the statements in light of their spontaneity and consistent repetition, the child's unimpaired mental state at the time of the alleged incidents and at the time the child made the statements to the adults, the use of graphic sexual terminology and descriptions which is unexpected of a child of similar age, and the lack of motive to fabricate or to make false statements for the purpose of manipulating situations to her advantage insofar as the

don't even know that we have it anymore, so the vaginal area has the same ability to heal.
N.T. Hearing, 7/19/10, at 90.

result of making the statements was removal from the only home the child had ever known.

Trial Court Order, 2/23/09, at 2.

The factors considered by the trial court were relevant to, and, indeed, consistent with, its determination that the time, content, and circumstances of the victim's out-of-court statements provided sufficient indicia of reliability so as to be admissible under the TYHA. *See Delbridge*, 855 A.2d at 47 (the most obvious factors to be considered in assessing the reliability of hearsay statements under *Wright* include the spontaneity of the statements, consistency in repetition, the mental state of the declarant, use of terms unexpected in children of that age, and the lack of a motive to fabricate). Accordingly, to the extent the Superior Court concluded the trial court erred in finding the time, content, and circumstances of the victim's statement provided sufficient indicia of reliability, we hold the Superior Court erred.

In sum, we hold that a finding of a child's competency under Pa.R.E. 601 is not a prerequisite to the admission of hearsay statements under the TYHA. Additionally, we find no error by the trial court in concluding the victim was unavailable as a witness. Finally, we hold that the Superior Court erred in finding erroneous the trial court's determination that the time, content, and circumstances of the victim's statements provided sufficient indicia of reliability. Accordingly, the Superior Court erred in determining the trial court abused its discretion in admitting the victim's out-of-court statements into evidence pursuant to the TYHA. However, as Appellee raised additional issues in his appeal to the Superior Court, which the Superior Court did not address as a result of its determination that the victim's competency was a prerequisite to the admission of her out-of-court statements, we remand the matter to the Superior Court for consideration of Appellee's remaining issues.

Order reversed. Case remanded.

Former Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE and Justices EAKIN and McCAFFERY join the opinion.

Justice SAYLOR files a concurring opinion in which Justice BAER joins.

Justice SAYLOR, concurring.

I concur in the result reached by the majority, although my reasoning is somewhat different.

First, while I agree that competency to testify is not a prerequisite to the admissibility of out-of-court statements under the Tender Years Hearsay Act ("TYHA"), *see* Majority Opinion, at 541–43, 93 A.3d at 453–54, and that in this limited sense the two issues are "distinct," *id.* at 539, 93 A.3d at 452, I believe the two types of assessments may be interrelated in some circumstances. For example, competency requires an understanding of the duty to tell the truth. *See* Pa.R.E. 601(b)(4). Absent such an understanding, the witness cannot logically be deemed credible.[1] Similarly, for a declarant's out-of-court statement to be admissible under the TYHA, the court must find, *inter alia,* that its content and circumstances provide sufficient indicia of reliability. *See* 42 Pa.C.S. § 5985.1(a)(1). To the extent the alleged victim has a generalized difficulty distinguishing fiction from reality, or believes it is normal and acceptable to lie, the reliability of his or her prior hearsay statements is called into question, as such statements may be the product of imagination or creativity. The present case is illustrative: at the *in camera* hearing, not only did A.W. give a number of nonsensical answers and maintain that it was a "good thing" to lie, but her testimony included fictitious elements, such as an affirmation that Appellee had brought a horse and a gorilla into her room to sexually

---

1. The majority states that competency to testify is "not concerned with credibility." Majority Opinion, at 538, 93 A.3d at 451 (quoting *Commonwealth v. Delbridge,* 578 Pa. 641, 663, 855 A.2d 27, 40 (2003)). However, competency requires that the witness "sufficiently understand the duty to tell the truth," Pa.R.E. 601(b)(4), and it is difficult to understand how an individual who does not have such an understanding can be deemed credible. Although I joined the *Delbridge* majority, I now have reservations about that particular aspect of the opinion.

abuse her. *See* N.T., Jan. 30, 2009, at 34, *reproduced in* R.R. 19a. It seems to me that these types of answers necessarily color any determination regarding whether her out-of-court assertions are sufficiently trustworthy to fall within Section 5985.1's scope.

Another area of overlap concerns the possibility of manipulation and memory taint. In this regard, the value of such traditional indicia of reliability as spontaneity, descriptions unexpected of a child of similar age, and consistency in repetition may be compromised if the alleged victim has been coached or prompted to accuse the defendant by someone with ulterior motives. *See State v. Robinson*, 153 Ariz. 191, 735 P.2d 801, 811 (1987) ("If there is evidence of prior interrogation, prompting, or manipulation by adults, spontaneity may be an inaccurate indicator of trustworthiness."); *see also id.* ("Consistency does not always guarantee trustworthiness; it could be evidence that the statements were rehearsed."). Children are known to be susceptible to suggestion and can be misled by leading questions asked by an interviewer with a preconceived idea of what the child should disclose. *See Idaho v. Wright*, 497 U.S. 805, 812–13, 110 S.Ct. 3139, 3145, 111 L.Ed.2d 638 (1990); *Commonwealth v. R.P.S.*, 737 A.2d 747, 749 (Pa.Super.1999) ("[C]hildren are susceptible to suggestions and fantasy.").[2] Courts have therefore recognized that children may change their answers to please the questioner, especially if the questioner is an authority figure, *see State v. Foust*, 920 S.W.2d 949, 952–53 (Mo.Ct.App.1996) (reciting a colloquy in which the alleged victim changed her answers to accuse the defendant of sexual abuse in response to a police officer's leading questions), and that a child's memory can become distorted, or "tainted," in the process. *Delbridge*, 578 Pa. at 655, 855 A.2d at 35; *see People v. Cardamone*, 381 Ill.App.3d 462, 319 Ill.Dec. 479, 885 N.E.2d 1159, 1190 (2008).

**2.** One court suggested that an expert opinion along these lines was confirmatory of what the average person would believe in the absence of expert testimony—children are susceptible to suggestion and manipulation by adults. A skillful questioner can get a child to say almost everything. This conclusion is utterly expected and intuitive. *Ardolino v. State*, Criminal No. 98–430, *slip op.* at 4–5, 2001 WL 1719196 (Me.Super.Ct. May 14, 2001), *quoted in Ardolino v. Warden*, 223 F.Supp.2d 215, 236 (D.Me.2002).

Thus, if it comes to light in a TYHA hearing that memory distortion might have occurred, this could impact upon the court's evaluation of what might otherwise constitute indicia of reliability. Because an impaired memory can also cause a witness to be deemed incompetent to testify, *see* Pa.R.E. 601(b)(3), this is another example of how judicial determinations regarding competency, and the presence indicia of reliability, can logically interrelate.

As applied here, I find this to be a very close case in light of A.W.'s testimony at the Section 5985.1 hearing. However, I am ultimately able to agree with the majority that A.W.'s out-of-court statements were admissible for two reasons. First, five witnesses testified regarding different hearsay statements made by A.W., and the nature of the testimony was substantively consistent. Additionally, the statements were made in a substantially different context than the colloquy that occurred at the hearing, and there was no evidence of coaching, prompting, leading questioning, or manipulation. If these same hearsay statements had been made during an out-of-court question-and-answer exchange not initiated by A.W., I might reach a different conclusion.

I also have difficulty with the disposition of the second question accepted for review, insofar as the Court's opinion may be read to discount the relevance, in the context of a TYHA assessment, of wider factors (such as corroboration), based on the particularized-guarantees-of-trustworthiness framework developed in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), *abrogated by Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990).

The TYHA does not speak in terms of "particularized guarantees," but whether the time, content, and circumstances of the statement provide sufficient indicia of reliability. Although this wording may be similar to the language employed in *Roberts* and *Wright,* it is not identical and leaves open the question of what types of circumstances should be taken into account. Thus, I do not view the Supreme Court's Confronta-

tion Clause precedent as dictating that factors extrinsic to the statement itself "are not relevant to a [TYHA] reliability analysis." Majority Opinion, at 545–46, 93 A.3d at 455. For instance, I would not categorically exclude from a statement's "circumstances" all evidence tending to either corroborate or disprove the accusations.[3] Particularly where (as here) the declarant is very young and has a demonstrated difficulty understanding the importance of telling the truth or the difference between truth and fantasy, such a *per se* exclusion will, I believe, unduly weaken the trial court's ability to filter out unreliable accusations. *See generally Comprehensive Approach*, 83 COLUM. L.REV. at 1751–52 (cataloguing difficulties with children's hearsay statements concerning alleged sexual abuse). In this regard, it is worth observing that a number of other states expressly require corroboration when the declarant is unavailable to testify, *see, e.g.,* ALA.CODE § 15–25–34; Miss.R.E. 803(25); 12 OKLA. STAT. § 2803.1; S.D. CODIFIED LAWS § 19–16–38; WASH REV.CODE § 9A.44.120, as did the Pennsylvania statute until that prerequisite was removed in 1996. *See* Act of Dec. 18, 1996, P.L. 1077, No. 161, § 5. To my mind this, at a minimum, demonstrates that corroboration can be relevant, and counsels in favor of viewing it as a legitimate circumstance for courts to consider when making an assessment under Section 5985.1(a)—again, particularly when there are substantial questions about the declarant's veracity.

More fundamentally, I question whether *Wright's* distinction between factors surrounding hearsay statements themselves, and other, extrinsic, features (such as the presence or absence of corroboration), *see Wright*, 497 U.S. at 822, 110 S.Ct. at 3150, is internally consistent as a matter of logic. For

3. *See generally* Judy Yun, Note, *A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases*, 83 COLUM. L.REV 1745, 1758 (1983) (*"Comprehensive Approach"*) ("To determine accuracy [of a hearsay statement], circumstances such as the age of the child, his or her physical and mental condition, the exact circumstances of the alleged event, the language used by the child, *the presence of corroborative physical evidence,* the relationship of the accused to the child, the child's family, school, and peer relationships, and the reliability of the testifying witness, can be examined.") (footnotes omitted, emphasis added).

example, the Supreme Court clarified that evidence concerning the existence of a motive to fabricate is subsumed within the "circumstances surrounding the making of the [hearsay] statement[ ]" itself, *id.* at 826, 110 S.Ct. at 3152, and therefore, implicates a particularized guarantee associated with the statement. However, a declarant's motive to fabricate, or lack thereof, often cannot be discerned from a statement's content or its immediately-surrounding circumstances, and must instead be gleaned through external factors, as the Commonwealth's present argument demonstrates. *See* Brief for Commonwealth at 21 (arguing that A.W. had no motive to fabricate her accusations because her parents were married and not involved in a custody dispute). I fail to see why other extrinsic factors such as memory taint, manipulation, and corroboration, should stand on a different footing and, as such, should never be considered "circumstances" capable of supporting or detracting from reliability under Section 5985.1(a)(1).

Additionally, and as suggested above, to the extent a trial court's confidence in a declarant's truthfulness diminishes, the relevance and importance of such extrinsic factors becomes increasingly pronounced. This is not a trivial concern in light of the need for the trial judge's screening function to be fulfilled as accurately as possible. Without derogating the role of the jury as the ultimate fact-finder, it should be recognized that child sex-abuse charges are inherently inflammatory and tend to invoke strong feelings toward the accused. If the defendant is guilty, the justice system obviously benefits from the introduction of incriminating evidence in view of the high social cost of allowing him to go free, often to re-offend. However, the opposite error, conviction of an innocent defendant, also involves a significant social cost, as the ensuing criminal punishment and society's condemnation can be severe. This highlights the need for extreme caution to avoid, on the one hand, withholding a victimized child's statements from the jury, and on the other, allowing a manipulated child's accusations to be placed before the jury. With this in mind, I would not transport wholesale into the Tender Years Hearsay

Act the particularized-guarantees framework originally developed for the Confrontation Clause. Instead, I would permit some measure of latitude for a court ruling on a TYHA motion to consider the statement's "time, content and circumstances," broadly construed, so that it may fulfill its gatekeeper function as accurately as possible.

As for the present matter, I would conclude that the lack of physical corroboration tends to undermine the statements' admissibility in the circumstances, albeit not fatally so in view of the explanation contained in the record—and recited by the majority—concerning why such physical proofs might reasonably be absent. *See* Majority Opinion, at 545–46 n. 10, 93 A.3d at 455 n. 10 (quoting N.T., July 19, 2010, at 90, *reproduced in* R.R. 174a). Accordingly, I am able to conclude that the trial court acted within its discretion in permitting introduction of the statements at trial.

Justice BAER joins this concurring opinion.