J-S79012-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ANTHONY FREEMAN, | |
| Appellant | No. 919 EDA 2014 |

Appeal from the Judgment of Sentence entered April 29, 2011,
in the Court of Common Pleas of Philadelphia County,
Criminal Division, at No(s): CP-51-CR-0014560-2009
and CP-51-CR-0014561-2009

BEFORE:  ALLEN, OLSON, and STRASSBURGER*, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED DECEMBER 11, 2014**

Anthony Freeman ("Appellant") appeals from the judgment of sentence imposed after the trial court convicted him of two counts of corruption of minors.

The trial court recited the factual background as follows:

> In July 2009, S.S. and C.S., who was intellectually impaired, were living with their mother, brother and [Appellant] in their mother's house on North 29th Street in the City of Philadelphia.  At this time, S.S. and C.S. were under the age of eighteen and [Appellant] was thirty-three years old.  Over the course of that summer, there were three separate incidents of contact between [Appellant] and the girls that constitute the basis for the instant matter.
>
> One morning, S.S. was downstairs in the living room texting on her phone, when [Appellant] walked past her and told her to close her legs.  S.S. said "no, my legs aren't open" and [Appellant] reached over and grabbed her vaginal area with the palm of his hand over the top of her shorts.  S.S. kicked back at

*Retired Senior Judge assigned to Superior Court.

[Appellant] and he walked away. As [Appellant] headed upstairs, C.S. was sitting on the stairs and [Appellant] told her to give him a kiss. When C.S. said "no", [Appellant] leaned in and kissed her on the mouth.

One Sunday, S.S. was locked out of the house and began knocking on the window when her hand went through the glass. She went upstairs to clean up her hand where [Appellant] helped her to clean and bandage it. [Appellant] then told her to pull up her shorts because he could see her butt. S.S. resisted and [Appellant] reached down the back of her shorts, under her panties, and put his hand on her butt. S.S. walked away and then, as she was sitting in the hallway by her brother's bedroom, [Appellant] walked past her and grabbed her vaginal area with the palm of his hand over the top of her shorts. S.S. told her mother when she came home from work that night.

One day, C.S. was downstairs in the living room watching television, when [Appellant] came over to her and took the palm of his hand and rubbed in around her vaginal area on the zipper area of her jeans. C.S. told him not to touch her and then he kissed her on the mouth, after which she told him not to kiss her anymore. C.S. told her mom immediately and her mom got mad at [Appellant].

In August 2009, C.S. told her Aunt Ruby about what [Appellant] had done when she saw her at church on Sunday. Aunt Ruby went to the house, talked to S.S., and then notified the police. C.S. stayed with Aunt Ruby and S.S. stayed with Aunt Jeanette until their mother came home from work that day. On August 25, 2009, S.S. spoke with to two [sic] women from DHS and on September 3, 2009, S.S. gave her statement to the police detectives. [Appellant] stopped living at the house on August 23, 2009.

Trial Court Opinion, 5/7/14, at 3-4.

The trial court, following the waiver trial, convicted Appellant of two counts of corruption of minors, and sentenced Appellant to an aggregate 21 to 48 months incarceration and 5 years of reporting probation. Appellant did not file a timely appeal. He subsequently filed a PCRA petition, which

ultimately resulted in the trial court reinstating Appellant's direct appeal rights. Both Appellant and the trial court have complied with Pa.R.A.P. 1925. Appellant raises a single issue for our review:

Did not the lower court err in finding C.S. competent to testify where she did not have the capacity to perceive accurately, the ability to communicate intelligible answers, the ability to remember, or an understanding of the duty to speak the truth?

Appellant's Brief at 3.

Appellant argues that the trial court erred by determining that C.S. was competent to testify because her testimony was "fraught with inconsistencies, contradictions, subject to taint, and she provided largely 'yes' or 'no' answers more in line with appeasing the interviewer than demonstrating an understanding of the questions." *Id*. at 18. Appellant asserts that C.S. "could not distinguish between the truth and a lie." *Id*.

In Pennsylvania, competency is a threshold legal issue, to be decided by the trial court. *Commonwealth v. Hutchinson*, 25 A.3d 277, 290 (Pa. 2011) (citation omitted). An appellate court's standard of review of a trial court's evidentiary rulings, including rulings on determinations of witness competency, is abuse of discretion. *Commonwealth v. Walter*, 93 A.3d 442, 449 (Pa. 2014) (citation omitted). Competency relates to the "capacity of the witness to communicate, to observe an event and accurately recall that observation, and to understand the necessity to speak the truth. A competency hearing is not concerned with credibility. Credibility involves an

assessment of whether or not what the witness says is true." **Id**. at 451

(citation omitted).

> Generally, a witness is presumed competent to testify, and the burden falls on the objecting party to demonstrate that a witness is incompetent. Under Pa.R.E. 601(b) a person may be deemed incompetent to testify if the Court determines that, because of a mental condition or immaturity, the person:
>
> (1) is, or was, at any relevant time, incapable of perceiving accurately;
>
> (2) is unable to express himself or herself so as to be understood either directly or through an interpreter;
>
> (3) has an impaired memory; or
>
> (4) does not sufficiently understand the duty to tell the truth.
>
> Pa.R.E. 601(b).

**Id**.

Here, the trial court explained its reasoning for finding C.S. competent

to testify as follows:

> In conducting a preliminary inquiry into C.S.'s competence as a witness, this court asked a few questions of the witness before the Commonwealth and defense counsel began their respective competency examinations. In answering this court's questions about telling the truth, among other things, C.S.'s responses clearly indicated that she understood that she was under an obligation to tell the truth. During the direct examination of the competency hearing, C.S. clearly testified as to her age, family members, and educational experience and the reason that she had to come to court. Moreover, she unequivocally identified [Appellant] in court as her mother's boyfriend from a couple of years prior who she had lived with at her house on North 29[th] Street. C.S. further testified that she had to come to court to talk about the "bad stuff" that had happened with [Appellant] in her house. While C.S. experienced some difficulty in responding to the district attorney's hypothetical questions about telling the

truth with regard to jacket color, rain in the courtroom, and being a dog, C.S. demonstrated her comprehension of the gravity of telling the truth in the following exchange:

**District Attorney**: Okay. Is telling the truth a good thing or is it a bad thing?

**C.S.**: A good thing.

**District Attorney**: And is telling a lie, is that a good thing or is that a bad thing?

**C.S.**: Bad thing.

**District Attorney**: If you tell a lie, what happens?

**C.S.**: Go to jail.

**District Attorney**: So if you tell a lie to the judge today, what do you think will happen?

**C.S.**: Go to jail.

In consideration of the entire scope of C.S.'s testimony, regarding her life, her family and her schooling, as well as her testimony demonstrating her understanding of the gravity of telling the truth in court, this court finds that the four requisite capabilities for a witness were satisfied.

Trial Court Opinion, 5/7/14, at 5-6 (footnote citing notes of testimony omitted).

We discern no abuse of discretion by the trial court. As noted above, competency and credibility are distinct concepts. ***Walter, supra***. Here, the trial court, sitting as fact-finder, recognized as much, stating, "It's a waiver [trial] so I'm going to allow [C.S.'s testimony]." N.T., 1/31/11, at 31. Although there may have been inconsistencies in the testimony, it was for the trial court as fact-finder to assess credibility and believe all, part or none of the evidence. ***See, e.g., Commonwealth v. Buford***, ---A.3d---, WL

5018593 (Pa. Super. 2014) (citing **Commonwealth v. Jones**, 886 A.2d 689, 704 (Pa. Super. 2005) (The finder of fact, while passing upon the credibility of witnesses and weight of the evidence produced, is free to believe all part or none of the evidence.).  Upon review, we find no error in the trial court's determination that C.S. was competent to testify.  We therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/11/2014</u>