J-A18041-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JAY LEE WALTER, SR. | |
| Appellant | No. 1829 MDA 2010 |

Appeal from the Judgment of Sentence November 1, 2010
In the Court of Common Pleas of Franklin County
Criminal Division at No(s): CP-28-CR-0000532-2009

BEFORE:  LAZARUS, J., WECHT, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                 **FILED SEPTEMBER 09, 2014**

Jay Lee Walter, Sr., appeals from his judgment of sentence, entered in the Court of Common Pleas of Franklin County, following his conviction by a jury for rape of a child (under 13), involuntary deviate sexual intercourse with a child (under 13), indecent assault, endangering the welfare of a child, and aggravated indecent assault of a child.  The charges stemmed from events that occurred between October 2006 and October 2008 during which Walter allegedly had sexual intercourse with his daughter (born November 2003).  Walter was sentenced to an aggregate term of 23 to 50 years' incarceration and was ultimately determined to be a sexually violent predator (SVP) pursuant to 42 Pa.C.S. § 9792.  After careful review, we affirm.

This case has been remanded to this Court from our Supreme Court, *see Commonwealth v. Walter*, No. 53 MAP 2012, 2014 Pa. LEXIS 428 (Pa. Feb. 18, 2014), which reversed our previous decision finding the trial court abused its discretion by admitting the victim's out-of-court statements into evidence pursuant to the Tender Years Hearsay Act (TYHA), 42 Pa.C.S.A. § 5985.1,[1] and held that that a child's competency under Pa.R.E.

_____

[1] The TYHA allows statements made by a child victim of sexual assault to be admitted into evidence, if the statements are relevant and sufficiently reliable. The statute provides, in relevant part:

> (a) General rule.—**An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger,** describing any of the offenses enumerated in 18 Pa.C.S. Chs. 25 (relating to criminal homicide), 27 (relating to assault), 29 (relating to kidnapping), 31 (relating to sexual offense), 35 (relating to burglary and other criminal intrusion) and 37 (relating to robbery), not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:
>
> > **(1) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the s**tatement **provide sufficient indicia  of reliability; and**
> >
> > **(2) the child either:**
> >
> > > (i) testifies at the proceeding; or
> > > **(ii) is unavailable as a witness.**
>
> **(a.1) Emotional distress.—In order to make a finding under subsection (a)(2)(ii) that the child is unavailable as a witness, the court must determine, based on evidence presented to it, that testimony by the child as a witness will result in the child suffering serious emotional distress**

*(Footnote Continued Next Page)*

601 is not a prerequisite to the admission of hearsay statements under the TYHA. In reaching its decision, the Supreme Court also concluded that the trial court correctly determined that the instant victim was unavailable as a witness.[2] On remand, our Court has been instructed to address Walter's remaining issues on appeal:[3]

> (1) Did the Court err in prohibiting the Defense from having the opportunity, as requested, to retain an expert on the issues related to the statements allegedly made by the victim?
>
> (2) Did the Court err in precluding the defense from calling the alleged victim as a witness at trial?

_(Footnote Continued)_ _____

> **that would substantially impair the child's ability to reasonably communicate. In making this determination, the court may do all of the following:**
>
>> **(1) Observe and question the child, either inside or outside the courtroom.**
>>
>> **(2) Hear testimony of a parent or custodian of any other person, such as a person who has dealt with the child in a medical or therapeutic setting.**

42 Pa.C.S.A. § 5985.1(a), (a.1) (emphasis added).

[2] Specifically, the Supreme Court held that our Court "erred in finding erroneous the trial court's determination that the time, content, and circumstances of the victim's statements provided sufficient indicia of reliability." **Walter**, 2014 Pa. LEXIS 428, at *35.

[3] Walter's first issue on appeal was disposed of by the Supreme Court. **See Walter**, 2014 Pa. LEXIS 428, at *35-36 (trial court correctly concluded victim was unavailable as witness and, therefore, that her out-of-court statements provided sufficient indicia of reliability so as to be admissible under TYHA). Therefore, we need not address it on appeal.

(3)     Did the Court err in precluding the Defense from bringing forth at trial testimony of eye-witnesses as to Jay Walters' interaction with the alleged victim?

(4)     Did the Court err in precluding the Defense from bringing forth at trial the fact that alleged eye-witness [sic] Angel Morris has been convicted of a criminal act similar to that in which the Defendant was charged?

(5)     Did the Court err in denying the Defense's request to have the Defendant professionally evaluated to determine if he was competent to stand trial and/or to withdraw a guilty plea tendered?

(6)     Was the Defendant inappropriately motivated to withdraw his plea of guilty by the fact that the Franklin County Probation Department refused to release the Defendant on pre-trial release pending sentencing?

(7)     Was Walter inappropriately deemed to be a "sexually violent predator" pursuant to 42 Pa.C.S.A. § 9795.4?

The Supreme Court aptly summarized the underlying facts of this case as follows:

On October 17, 2008, Franklin County Children & Youth Services ("CYS") received an anonymous call regarding the welfare of A.W. (hereinafter "victim"), the four-year-old daughter of Appellee Jay Lee Walter. A CYS caseworker, Leann Briggs, asked Appellee and his wife, the victim's mother, to bring the victim to the agency, so that Briggs could verify the child's safety. During an interview Briggs conducted with the victim, the victim indicated that she was afraid of Appellee because of "Chuckie," a name she used to refer to Appellee's penis. The victim told Briggs that Chuckie moves back and forth on top of her, and that Chuckie goes inside of her body, specifically, her vagina. The victim also told Briggs that Appellee made the victim take her clothes off, lie down, and then forced the family dog, "Baby," to lick the victim's vagina. Following Briggs' interview, the victim was placed in foster care on an emergency basis. Pennsylvania State Police Trooper Courtney Pattillo began an investigation, during which time she interviewed various witnesses, including Appellee. On October 20, 2008, Appellee was charged with rape of a child, two counts of involuntary

- 4 -

deviate sexual intercourse with a child, indecent assault, and endangering the welfare of a child.

Thereafter, the Commonwealth filed a motion seeking to introduce certain statements made by the victim to third parties into evidence pursuant to the TYHA.

* * *

At a hearing on January 30, 2009 ("TYHA Hearing"), the Commonwealth conducted an in camera evaluation of the victim, who by then had turned five. The trial court asked the victim a number of questions, including questions regarding her name, age, and living arrangements, and she appeared to give appropriate answers. However, when the Commonwealth asked the victim various questions related to her understanding of truth and lies, the victim gave a number of nonsensical or bizarre answers.

The Commonwealth presented the testimony of the CYS caseworker, Briggs, as well as testimony by the victim's foster mother ("Foster Mother"), with whom the victim had been living since October 17, 2008. Foster Mother testified regarding the emotional effect court hearings and appearances had on the victim; specifically, Foster Mother testified that the victim became "very unsettled" and "very emotional" in the days following an appearance at the courthouse, and would suffer from nightmares for several days after attending court proceedings. N.T. Hearing, 1/30/09, at 42. On one occasion, immediately after a preparatory session with the prosecutor, the victim smeared feces on the walls of the house. Foster Mother stated that, in her view, requiring the victim to testify in front of Appellee would traumatize the victim.

Foster Mother also testified regarding an incident that occurred at the end of October 2008, shortly after the victim moved in with the family. According to Foster Mother, the victim was on the toilet and Foster Mother was cleaning up after her when the victim suddenly asked, "is there anymore blood?" *Id.* at 39. When Foster Mother asked the victim what she meant, the victim replied, "there was blood when Daddy Jay sticks his finger in there." *Id.* Foster Mother recounted another occasion on which she was awakened as the victim screamed and ran into Foster Mother's bedroom. The victim was crying and shaking and

- 5 -

stated that she was "afraid that daddy was going to bring Chuckie to her room," and that "Chuckie bites." *Id.* at 40. The victim told Foster Mother that "Chuckie is daddy's body's part," and drew a picture which indicated that that "Chuckie" was her father's penis. *Id.*

The Commonwealth next presented the testimony of Angela Morris, a family friend of the Walters. Morris testified that, around October 2007, she and her son were at a child's birthday party at which the victim was also a guest. During the party, the victim grabbed Morris' son's "private part." *Id.* at 50. When Morris confronted the victim about the behavior, the victim responded, "it was okay to do that;" "daddy says it's okay;" and that she "touch[es] daddy there." *Id.* at 50-51.

Diane Bulger, a neighbor and former friend of the family, also testified at the TYHA hearing. Bulger testified that, in October 2008, she went to the Chambersburg Mall with her son, the victim, Appellee, and Appellee's wife. Bulger testified that Appellee took the victim into the men's bathroom at the mall, and when the victim exited the bathroom, she was crying and stated, "don't let daddy hurt me down below." *Id.* at 61.

Another friend of the family, Rebecca Alkire, testified that, in May 2008, while she was babysitting the victim, she was in the process of changing the victim's diaper when the victim stated, "watch [your] fingers." *Id.* at 64. Concerned about the statement, Alkire later discussed it with the victim's mother, who explained that she and Appellee were trying to train the victim to use this phrase if someone tried to touch her in her vaginal area. *Id.* Alkire recounted another time, in July or August 2008, when the victim was watching cartoons at Alkire's house and Alkire tickled the victim. The victim immediately became tense, and Alkire asked the victim if anyone had ever touched her. The victim replied that her daddy touches her "pussy" with his "dick." *Id.* at 65.

On February 23, 2009, the trial court entered an order holding the victim was competent to testify, but was unavailable as a witness because testifying would cause her serious emotional distress that would substantially impair her ability to reasonably communicate to the jury. Trial Court Order, 2/23/09, at 2. The court, however, instructed the parties that the court's finding of the victim's competence at the TYHA hearing did not preclude Appellee from challenging the child's competency at later stages

of the proceedings. The court further concluded the statements the victim made to the five adult witnesses (Briggs, Foster Mother, Bulger, Morris, and Alkire) who testified at the TYHA hearing, contained sufficient indicia of reliability to be admissible under the TYHA. Finally, the court granted the Commonwealth's motion to allow the victim to testify by contemporaneous alternative method.

A preliminary hearing was held on March 31, 2009, before a magisterial district judge ("MDJ") and the victim was called to testify outside of Appellee's presence. However, following questioning of the victim, the MDJ concluded the victim was not, in fact, competent to testify because, inter alia, she repeatedly stated that it was a "good thing" to tell a lie. N.T. Hearing, 3/31/09, at 10. Nevertheless, the MDJ proceeded with the preliminary hearing, and the prosecutor called the same witnesses who previously testified at the TYHA hearing.

On July 19, 2010, a jury trial commenced, and the trial court permitted a defense witness to read into the record the victim's testimony from both the TYHA hearing and the preliminary hearing. The court also permitted the five adult witnesses to testify pursuant to the TYHA regarding the statements made by the victim. The jury convicted Appellee of all charges, and the trial court sentenced him to an aggregate term of 30 to 60 years['] incarceration. Appellee also was ordered to undergo an evaluation by the Sexual Offender Assessment Board, and, ultimately, was determined to be a sexually violent predator.

*Walter*, 2014 Pa. LEXIS 428, at *1-10. After careful review, we affirm Walter's judgment of sentence based upon the well-reasoned decision authored by the Honorable Douglas W. Herman.

Here, the trial court correctly disallowed Walter's expert from evaluating the victim's competency and whether her memory had been tainted as a result of improper interview techniques used in prior proceedings. Walter hired an expert who prepared a preliminary opinion, based upon her review of the victim's preliminary proceeding testimony and

- 7 -

her viewing of a tape of the victim's interview with a Franklin County Children and Youth Services' counselor. The expert opined that there were "serious issues of the competence of this child to testify" and recommended a comprehensive evaluation of the child. However, when the Commonwealth informed the court at a pretrial hearing that it would not call the child victim or play any interview videos of the victim, the court ruled there was no further need to explore the issue of the child's competency at that time.[4] Moreover, while various adult witnesses did testify *in camera* to statements made by the victim regarding the alleged abuse, the defense never requested a "taint hearing" to determine whether the victim was coerced into making the relevant statements. ***Commonwealth v. Cesar***, 911 A.2d 978 (Pa. Super. 2006) (during hearing on competency of child witness on issue of taint, party alleging taint bears burden of production of evidence of taint and burden of persuasion to show taint by clear and convincing evidence). Based on the fact that the court deemed the victim competent (closer to the time that the actual statements were made to adult witness as opposed to a later scheduled competency hearing), found an indicia of reliability[5] in the victim's statements, and because Walter failed to

_____

[4] Prior to Walter's motion to appoint an expert to determine the child-victim's competency, the trial court had already determined that the victim was competent to testify (albeit unavailable under section 5985.1 of the TYHA).

[5] Specifically, the court found that:
*(Footnote Continued Next Page)*

produce evidence of any taint, the court correctly ruled that the expert should not review the victim's competency.

Moreover, the trial court correctly determined that the victim was unavailable to testify because doing so would result in her suffering serious emotional distress to the point where she could not reasonably communicate. *See* 42 Pa.C.S. § 5985.1(a.1). Accordingly, Walter's right to compulsory process was not violated. *Commonwealth v. Lyons*, 833 A.2d 245, 254 (Pa. Super. 2003). The trial court also properly denied Walter's request to call witnesses to testify that they had observed him with the victim in the past and that he acted appropriately with the victim on many occasions. Because the admission of such evidence would constitute character testimony, as well as specific instances of Walter's conduct, it is not admissible under Pa.R.E. 404, 405.

---

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

> [T]he child was particularly likely to be telling the truth when the child made the statements in light of their spontaneity and consistent repetition, the child's unimpaired mental state at the time of the alleged incidents and at the time the child made the statements to the adults, the use of graphic sexual terminology and descriptions which is unexpected of a child of similar age, and the lack of motive to fabricate or to make false statements for the purpose of manipulating situations to her advantage insofar as the result of making the statements was removal from the only home the child has ever known.

Trial Court Order, 2/23/09, at 2.

Additionally, the trial court correctly refused to permit Walter to cross-examine witness, Angela Moore, about her past statutory sexual assault convictions. Walter offered no evidence to show that Moore's convictions were relevant with regard to her bias or motive to testify falsely, or that they were considered "other acts" under Pa.R.E. 404(b). Moreover, those convictions were not considered *crimen falsi* crimes that would be admissible under Pa.R.E. 609.

The trial court also correctly denied Walter's request for a competency/mental health evaluation. Walter's answers were clear and understandable throughout a hearing held on the issue, he presented no evidence on the issue of his incompetency other than the fact that he had mental health issues in the past and was emotional about the recent loss of his father and the fact that his daughter had been adopted. **See Commonwealth v. Chopak**, 615 A.2d 696, 700 (Pa. 1992) (regarding issue of defendant's competence, appellate courts recognize significance of and give deference to trial judge's determination of competency based upon trial judge's ability to watch and evaluate defendant during proceedings).

The trial court correctly permitted Walter to withdraw his guilty plea after an extensive colloquy where Walter indicated that he was innocent and the Commonwealth would suffer no substantial prejudice from the withdrawal. N.T. Withdraw of Guilty Plea Proceedings, 4/7/2010, at 6-7, 13-14. **See Commonwealth v. Shaffer**, 446 A.2d 591, 593 (Pa. 1982) (pre-sentence requests to withdraw guilty plea should be liberally granted when

defendant shows "fair and just" reason to withdraw plea absent "substantial prejudice;" mere assertion of innocence is "fair and just" reason for withdrawal). Moreover, because Walter never requested reconsideration of the plea withdrawal prior to trial, the claim that his decision to withdraw his plea was uninformed, which is raised for the first time on appeal, is waived. Pa.R.A.P. 302(a).

Finally, the trial court properly classified Walter as an SVP[6] where a thirteen-year member of the Sexual Offenders Assessment Board (SOAB) testified and the evidence clearly showed that Walter suffers from a mental abnormality (pedophilia) as defined in the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), exhibited predatory behavior in this case, and where Walter's behavior occurred with a child more than five years his minor for over two years. Moreover, the expert's use of the section 9795.4 factors to make his SVP determination was not arbitrary; the expert's assessment fully discussed all of the factors pertaining to Walter and how they were

_____

[6] A sexually violent predator is defined as a person who has been convicted of a sexually violent offense as set forth in 42 Pa.C.S. § 9795.1 (relating to registration) and who is determined to be a sexually violent predator under 42 Pa.C.S. § 9795.4 (relating to assessments) due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses. **See** 42 Pa.C.S. § 9792; **see also Commonwealth v. Krouse**, 799 A.2d 835, 838 (Pa. Super. 2002) (en banc). "Mental abnormality" is a congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons. 42 Pa.C.S. § 9792.

relevant to his mental abnormality. **_See Commonwealth v. Feucht_**, 955 A.2d 377 (Pa. Super. 2008) (no statutory requirement that all or any particular number section 9795.4 factors be present or absent to support SVP designation; factors are not "a check list.").

We direct the parties to attach a copy of the trial court's decisions,[7] authored by Judge Herman, in the event of further proceedings in the matter.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/9/2014

---

[7] **_See_** Order of Court, 2/24/2009; Opinion and Order, 1/6/2010; and Opinion *sur* Pa.R.A.P. 1925(a) and Order of Court, 1/7/2011.

Filed _____ FEB 24 2009

_____
_____ Clerk

---

# IN THE COURT OF COMMON PLEAS OF THE 39TH JUDICIAL DISTRICT OF PENNSYLVANIA – FRANKLIN COUNTY BRANCH

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | Criminal Action |
| | : | |
| vs. | : | No.-348—2008 |
| | : | |
| Jay Lee Walter, Sr., | : | Charges: Rape of a Child, |
| Defendant | : | Involuntary Deviate Sexual |
| | : | Intercourse with a Child, Indecent |
| | : | Assault, Endangering the Welfare |
| | : | of a Child |

## ORDER OF COURT

**NOW THIS** _____ day of February 2009, upon review and consideration of the Commonwealth's Motion for the Admission of Certain Statements pursuant to section 5985.1 of the Judicial Code [42 Pa.C.S.A. §5985.1] concerning the admissibility of out-of-court statements, and the Commonwealth's Motion pursuant to section 5985 for Testimony by Contemporaneous Alternative Method, the testimony presented at the January 30, 2009 in camera hearing, written arguments of counsel and the law, the court hereby rules as follows:

(1) Admissibility of Certain Statements, 42 Pa.C.S.A. §5985.1. The court GRANTS the Commonwealth's Motion with regard to the child's out-of-court statements made to the five adult witnesses who testified at the in camera hearing. The alleged victim was

1

younger than age 12 when the statements were made (the child in this matter was 4 - 5 years old), those statements are relevant to the particular crimes charged, and the time, content and circumstances of the statements provide sufficient indicia of reliability. §5985.1(a)(1). In finding there are sufficient indicia of reliability, the court considered the following factors: the child was particularly likely to be telling the truth when the child made the statements in light of their spontaneity and consistent repetition, the child's unimpaired mental state at the time of the alleged incidents and at the time the child made the statements to the adults, the use of graphic sexual terminology and descriptions which is unexpected of a child of similar age, and the lack of motive to fabricate or to make false statements for the purpose of manipulating situations to her advantage insofar as the result of making the statements was removal from the only home the child had ever known. Commonwealth v. Hanawalt, 615 A.2d 432 (Pa.Super. 1992), citing Idaho v. Wright, 497 U.S. 805 (1990). The court also found by a preponderance of the evidence that the overall flavor of the child's demeanor and responses showed the child was competent to testify at the in camera hearing as that concept is defined by Pennsylvania Rule of Evidence 601. Commonwealth v. D.J.A., 800 A.2d 965 (Pa.Super. 2002); Ohlbaum on the Pennsylvania Rules of Evidence, 2008-2009 edition, §601.10.

Also, the child is unavailable as a witness because, based on the evidence presented at the in camera hearing, testimony by the child will result in the child suffering serious emotional distress that would substantially impair the child's ability to reasonably communicate. §5985.1(a)(2)(ii) and (a.1). The Commonwealth presented credible evidence from the child's foster mother that the child experiences severe negative

2

reactions when engaged in court proceedings and other activities connected to this matter, even outside the defendant's presence, such as nightmares and the desire to smear feces over the walls of the foster home, and screaming, crying and freezing up when discussing matters pertaining to the child's own genitals and those of the defendant. Commonwealth v. Charlton, 902 A.2d 544 (Pa.Super. 2006); Fidler v. Cunningham-Small, 871 A.2d 231 (Pa.Super. 2005).

(2) Contemporaneous Alternative Method. 42 Pa.C.S.A. §5985. The court GRANTS the Commonwealth's Motion for the reason that the child's testifying either in an open forum in the presence and full view of the finder of fact or in the defendant's presence will result in the child suffering serious emotional distress that would substantially impair the child's ability to reasonably communicate. §5985(a.1).

FURTHERMORE, the court advises the Commonwealth and counsel for the defendant that our finding as to the child's competence as of the time of the in camera hearing in no way precludes the defendant from challenging the child's competence insofar as competence as that concept is broadly defined by Pa.R.E. 601 and interpretive case law remains an issue at every stage of these proceedings.

Pursuant to Pa.R.Crim.P. 114, the clerk of courts shall immediately docket this Order and record in the docket the date it was made. The clerk shall forthwith furnish a copy of the Order, by mail or personal delivery, to each party or attorney, and shall

3

record in the docket the time and manner thereof.

By the Court,

Douglas W. Herman, P.J.

*The Clerk of Courts shall serve:*
 *Lauren E. Sulcove, Esquire, Assistant District Attorney*
 *Stephen D. Kulla, Esquire*

**Jay Lee Walter, Sr.**
**OTN: K749228-4**

Feb. 24, 2009, served a true/attest copy of the ORDER OF COURT dated Feb. 23, 2009, signed by Judge Douglas W. Herman, by placing a copy of the same in the **Inter office** mail, to the following, by me personally.

District Attorney
Stephen Kulla, Esq.

Deputy Clerk

Filed... JAN 06 2010

## IN THE COURT OF COMMON PLEAS OF THE 39TH JUDICIAL DISTRICT OF PENNSYLVANIA–FRANKLIN COUNTY BRANCH

COMMONWEALTH OF
PENNSYLVANIA,
        Plaintiff

        vs.

Jay Lee Walter, Sr.,
        Defendant

:
:
:   Criminal Action
:   NO: 532 of 2009
:
:
:
:
:
:   Judge Douglas W. Herman
:

## *OPINION AND ORDER*

**FACTS:**

Before the Court is the Defendant Jay Lee Walter, Sr.'s Omnibus Pre-trial Motion (the "Motion") and the Commonwealth's Motion to Amend the Bills of Information (the "Commonwealth's Motion"). On October 20, 2008, the Commonwealth charged the Defendant with Rape of a Child, two counts of Involuntary Deviate Sexual Intercourse with a Child, Indecent Assault, and Endangering the Welfare of a Child. These criminal charges stem from events that occurred between October 2006 and October 2008 during which Mr. Walter allegedly had sexual intercourse with his four-year-old daughter.

On January 30, 2009, the Court held an *in camera* hearing for the purpose of determining whether to grant the Commonwealth's Motion for the Admission of Certain Statements pursuant to section 5985.1 of the Judicial Code, concerning the admissibility of out-of-court statements, and the Commonwealth's Motion for Testimony by Contemporaneous Alternative Method (testimony via teleconference) pursuant to section 5985 of the Judicial Code. 42 Pa.C.S.A.

31

§5985, 5985.1. The Court granted the Commonwealth's Motions by Order of Court dated February 23, 2009. Furthermore, the Court found the child-victim competent to testify at the time of the *in camera* hearing. However, the Court's competency finding did not preclude the Defendant from challenging the child's competency at other stages of the proceedings if competency is at issue under Rule 601 of the Pennsylvania Rules of Evidence.

The Defendant submitted the Motion on September 16, 2009. The Motion raises four issues pertaining to (1) the child-victim's competency; (2) the Defendant's cross-examination of Angela Morris regarding her prior non-*crimen falsi* convictions; (3) the Defendant's request to call witnesses to testify that they have observed the Defendant act appropriately with the victim on numerous occasions; and (4) the admission of hearsay testimony by witnesses regarding comments made to them by the child-victim. Additionally, the Commonwealth filed a Motion to Amend the Bills of Information on October 23, 2009. The Defendant opposes the Commonwealth's Motion.

On November 10, 2009, the Court granted the Defendant leave of court to retain Dr. Jolie Brams, a psychologist, to investigate whether the child's memory had been tainted as a result of improper interview techniques during prior proceedings. After extensive discussions with the child and the child's stepparents, the Commonwealth decided it will not call the child to testify as part of its case in chief. Therefore, at this stage of the proceeding it is unnecessary for the Court to discuss the issue of the child's competency that Defendant raises in the Motion. The Defendant also withdrew his objection pertaining to the hearsay testimony of several Commonwealth witnesses. The Court has already decided that these statements, although

technically hearsay, can be admitted into evidence due to the tender years of the child. The

Court will now address the remaining issues in turn.

**DISCUSSION:**

## I.
## DEFENDANT'S CROSS-EXAMINATION OF ANGELA MORRIS

The Defendant desires to cross-examine Angela Morris regarding her two prior

convictions for statutory sexual assault. At trial, Morris will testify that the child-victim grabbed

her son's private part. Furthermore, Morris will testify that when she questioned the child-victim

about her inappropriate behavior, the child-victim responded that her "daddy says it's okay," and

"I touch daddy there." The Defendant concedes that Morris' prior convictions are non-*crimen*

*falsi* offenses. However, the Defendant believes cross-examination of Morris is appropriate

under Pa.R.E. §404(b) to establish Morris' motive to falsely testify.

Generally, the Pennsylvania Rules of Evidence provide that "evidence of a person's

character or trait of character is not admissible for the purpose of proving action in conformity

therewith on a particular occasion." Pa.R.E. § 404(a). However, as the Commonwealth

accurately depicts, where the proffered evidence relates to a witness other than the accused or the

alleged victim, Rules 607, 608, and 609 govern the admissibility of character evidence.

Pa.R.E.404(a)(3). Rule 607 provides that the credibility of a witness may be impeached by any

party through evidence that is relevant to that issue, "except as otherwise provided by statute or

these Rules." Pa.R.E. 607. Rule 607 is limited by Rules 608 and 609. Pa.R.E. 608, 609. Rule

608 provides that the credibility of a witness may "be attacked...by evidence in the form of

reputation as to character" if the evidence refers "only to character for truthfulness or

untruthfulness." Pa.R.E. 608(a)(1). Additionally, Rule 608 forbids the use of specific instances

of conduct, except as provided in Rule 609, to attack the truthfulness of a witness. Pa.R.E. 608(b). Rule 609 permits the admission of evidence regarding past convictions of crimes provided the crime involved "dishonesty or false statement" and not more than ten years have elapsed since the date of conviction. Pa. R.E. §609.

Here, the Defendant concedes that he cannot cross-examine Morris regarding her past sex crimes pursuant to Rules 608 and/or 609 because the Defendant is seeking to impeach Morris with evidence of a non-*crimen falsi* conviction. For the impeachment of Morris' testimony to be proper, Morris' past convictions would need to have been crimes involving dishonesty or false statement as required by Rule 609. Instead, the Defendant seeks to question Morris about her prior convictions under a narrow exception to Rules 607-609 provided by Rule 404(b). Rule 404(b) permits the admission of evidence of "other crimes, wrongs, or acts" for specific purposes enumerated under the Rule. Pa.R.E. 404(b). Under Rule 404(b), evidence is only admissible if it is relevant "to an identifiable issue other than character" and is "...reasonably connected to the charged offense." L. Packel and A. Poulin, Pennsylvania Evidence Section 608.2 at page 246 (2007). Furthermore, since this is a criminal matter, the Defendant is required to establish that "the probative value of the evidence outweighs its potential prejudice." Pa. R.E.§ 404(b)(3). The Defendant argues that Morris' prior conviction is admissible under Rule 404(b)(2) as evidence of an "other crime" for the purpose of establishing the motive of Morris' testimony. Additionally, the Defendant argues that the balancing requirement of Rule 404(b)(3) is satisfied because the purpose of questioning Morris' about her prior-conviction is not to prejudice or embarrass her, but rather is to show her motive to falsely testify.

The Commonwealth argues the Defendant has not demonstrated that Morris' prior convictions are relevant to any potential bias or motive for her to falsely testify. The Court agrees. The Defendant has not sufficiently identified a purpose, other than Morris' character, to which Morris' prior-convictions are relevant. Although the Defendant claims that the prior convictions are relevant to show Morris' motive to testify falsely, the Defendant has not provided any factual support for this contention. The Court cannot fathom any possible motive Morris would have to falsely testify. Morris has already completed the sentences which resulted from her prior convictions, and there are no pending cases against Morris in Franklin County. Therefore, this is not a situation in which the prosecution could possibly have offered Morris a reduced sentence or a generous plea bargain in exchange for her testimony. We also note, that although the Defendant argues in his brief that the purpose of this evidence is to show bias, he has not offered any evidence that would tend to show the witness has some connection with the victim and her family that would color the witness's testimony or some negative connection with the Defendant which would prejudice the witness's testimony against him.

Applying the balancing test as required under Rule 404(3), the Court finds that the probative value of the evidence is outweighed by potential prejudice. As described above, the Defendant has not articulated any reason why evidence of Morris' prior convictions is probative of her motive to falsely testify. However, evidence of Morris' conviction for statutory sex crimes would certainly undermine the jury's opinion of Morris as a witness, thus prejudicing the Commonwealth's case against the Defendant. For the above reasons, the Court denies the Defendant's request to cross-examine Angela Morris about her prior convictions for statutory sexual assault.

## II.
### DEFENSE WITNESSES' TESTIMONY

The Defendant desires to call witnesses to testify that they have observed Defendant act appropriately with the child-victim on numerous occasions. The Commonwealth believes this testimony would be improper character evidence under Pennsylvania law. The Defendant argues the testimony should be admitted for the purpose of proving the Defendant's habit or routine practice.

To properly dispose of this matter, the Court must first distinguish character evidence from habit evidence. The Comment to Pa.R.E.§406 explains the difference as follows:

> character applies to a generalized propensity to act in a certain way without reference to specific conduct, and frequently contains a normative, or value-laden, component (e.g., a character for truthfulness). Habit connotes one's conduct in a precise factual context, and frequently involves mundane matters (e.g., recording the purpose for checks drawn).

Under the Pennsylvania Rules of Evidence, evidence of character or a trait of character is admissible only in the form of reputation evidence. Pa.R.E.§405. This is contrary to the Federal Rules of Evidence, which allow evidence of character to be admitted in the form of reputation or opinion evidence. Furthermore, character evidence is "not admissible for the purpose of proving action in conformity therewith on a particular occasion." Pa.R.E.§404(a).

On the other hand, Pennsylvania's Rule for admission of evidence of habit or routine practice mirrors the Federal Rule and requires "conduct that occurs with fixed regularity in repeated specific situations." Pa.R.E.§406. Unlike character evidence, evidence of habit may be admitted for the purpose of proving "that the conduct of the person...on a particular occasion was in conformity with the habit or routine practice." Pa.R.E.§406. The Pennsylvania Rules of

Evidence do not specify the proper methods of proving habit, but according to the comment to the Rule the determination is to be made on a case by case basis. Id.

The Defendant argues the proposed testimony is admissible as evidence of habit under Commonwealth v. Rivers, 644 A.2d 710 (1994), which according to the Defendant, "allowed the testimony of a witness based on their familiarity of the other person's conduct." In Rivers, the appellant claimed the trial court erred by admitting testimony from the decedent's daughter regarding the decedent's habit of keeping large amounts of money hidden in her home. Id. at 408-409. The appellant argued that the daughter's testimony was "mere speculation without proper foundation." Id. at 409. However, the Pennsylvania Supreme Court disagreed, stating that the daughter "was quite familiar with her mother's habit in keeping large sums of cash at hand...." Id. The Rivers Court concluded that the appellant's argument attacked the credibility of the daughter's testimony and did not preclude the admission of the testimony into evidence. Id.

Rivers does not adequately address the requirements for admission of habit evidence. In Waters v. Genesis Health Venture, Inc., 2005 WL 1279125 (E..D. Pa. 2005), the plaintiff brought a discrimination suit against her employer alleging that he fired her because she was Caucasian. Id. at 1. The plaintiff sought to introduce testimony from one of the defendant's former employees, who would testify that the defendant "hired a lot of African-Americans..." and that she "can't think of any non-African-Americans" that he hired. Id. at 2. The plaintiff argued this testimony was evidence of the defendant's habit of favoring blacks over white. Id. The Waters Court explained that for the testimony to qualify as habit evidence,

> the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semiautomatic' in nature. Id.

The Waters Court held that "evidence of discriminatory animus is far from a specific and particular behavior, such as walking down a stairway two steps at a time." Id. at 3.

The matter *sub judice* is clearly distinguishable from Rivers and fails to satisfy the requirements for admissibility of habit evidence. In Rivers, the daughter's testimony pertained to the decedent's custom of frequently keeping large amounts of money in her house. The daughter's testimony clearly satisfied the requirements of specificity and frequency. Here, although the Defendant may have satisfied the frequency requirement, specificity is clearly lacking. The proffered testimony that the Defendant "acted appropriately with his daughter" is not adequately specific and particular to be deemed evidence of habit. The Court does not believe this conduct can be characterized as "semi-automatic" in nature. Instead, the proffered testimony seems to suggest that the Defendant has a generalized propensity to act as a good father. We believe this is the type of "normative" behavior referred to in the comment to Pa.R.E. §406 which is evidence of character. The Court holds that the proffered testimony is character evidence under the Pennsylvania Rules of Evidence.

As previously discussed, character evidence is only admissible in the form of reputation evidence. Pa.R.E.§405. Under circumstances similar to the matter at hand, the Pennsylvania Superior Court in Commonwealth v. Van Horn, III, 797 A.2d 983, 988 (2002) decided the testimony was improper character evidence. In Van Horn, the appellant was convicted of rape and other charges resulting from the appellant's abuse of his minor daughter. Id. at 986. The appellant argued that his counsel was ineffective for failing to call his relatives to testify that the

appellant had never sexually abused any of them and that the appellant had a good relationship with the victim. Id. The Van Horn Court held that the testimony of the relatives did not constitute proper character testimony because the testimony did not involve the appellant's "general reputation in the community." Id. at 988.

Here, the proffered testimony is improper character evidence. The witnesses' testimony does not describe the Defendant's general reputation in the community but rather describes specific instances of the Defendant's conduct. Therefore, the Court denies the Defendant's request to present this evidence to the jury.

## III.
## COMMONWEALTH'S REQUEST TO AMEND THE INFORMATION

The Commonwealth's Motion seeks to amend the Bills of Information, changing the range of dates from October 1, 2007 through October 17, 2008 to October 1, 2006 through October 17, 2008. The Commonwealth desires to amend the Bills of Information, so it can elicit testimony from witnesses regarding certain sexual acts that allegedly occurred between the child and the Defendant prior to October 1, 2007.

Pursuant to Pa.R.Crim.Pro.§564, "the court may allow an information to be amended when there is a defect in...the date charged, provided the information as amended does not charge an additional or different offense." In support of the Commonwealth's Motion, the Commonwealth cites Commonwealth v. J.F., 800 A.2d 942 (Pa. Super. 2002), which upheld the Honorable John R. Walker's decision allowing the Commonwealth to change dates on Bills of Information. In J.F., Judge Walker ruled that a ten-month increase in time was "a *de minimus* change when measured against the backdrop of an almost five-year period." Id. at 945. Although

the suggested increase in the current case is slightly more than in J.F., the Court believes that the Commonwealth's proposed amendment to the Bills of Information would not charge an additional or different offense as prohibited by Pa.R.Crim.Pro §564. The Defendant was already charged with various sex crimes stemming from the alleged sexual abuse of the child-victim. Furthermore, the Defendant has withdrawn his objection to the Commonwealth's Motion in his brief, dated December 3, 2009. Therefore, the Court grants the Commonwealth's Motion.

An Order is attached.

**IN THE COURT OF COMMON PLEAS OF THE 39TH JUDICIAL DISTRICT OF PENNSYLVANIA–FRANKLIN COUNTY BRANCH**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | |
| Plaintiff | : | Criminal Action |
| | : | NO.: 532 of 2009 |
| vs. | : | |
| | : | |
| | : | |
| Jay Lee Walter, Sr., | : | |
| Defendant | : | Judge Douglas W. Herman |

## ORDER OF COURT

6/7th January, 2010, the Court having reviewed Defendant Jay Lee Walter, Sr.'s Omnbius Pre-trial Motion, the Commonwealth's Motion to Amend the Bills of Information, the briefs advocating and opposing the Motions, the arguments, and the law,

**IT IS HEREBY ORDERED** that:

1)  The portion of the Defendant's Motion regarding the Defendant's request to cross-examine Angela Morris about her prior convictions for statutory sexual assault is **DENIED.**

2)  The portion of the Defendant's Motion regarding the admissibility of testimony involving the witnesses' observations of the Defendant's interactions with the child-victim is **DENIED.**

3)  The Commonwealth's Motion to Amend the Bills of Information is **GRANTED.**

*Pursuant to Pa.R.Crim. P. 114, the clerk of courts shall immediately docket this Order and record in the docket the date it was made. The clerk shall forthwith furnish a copy of the Order, by mail or personal delivery, to each party or attorney, and shall record in the docket the time and manner thereof.*

Commonwealth v. Walter                                    Criminal Action #: 532 of 2009

*Order of Court*                                                              *Page 2*

By the Court,

_____ J.

Distribution:
Lauren E. Sulcove, Esq., Assistant District Attorney
Stephen D. Kulla, Esq., Counsel for Defendant

Jay Lee Walter, Sr.                          Case:   532-2009

January 6, 2010, I, Amy K. Hall, served a copy of the Opinion/Order signed January 6, 2010 by Douglas W. Herman, Judge, on the following persons by the following method:

**Interoffice Mail**

Franklin County
District Attorney's Office

Stephen D. Kulla, Esq.

_____
                    Deputy Clerk
