J-S32002-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ERICA MARIE LOOSE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIC SCHONEWOLF | : | |
| | : | |
| Appellant | : | No. 830 MDA 2022 |

Appeal from the Order Entered May 5, 2022
In the Court of Common Pleas of Berks County
Civil Division at No(s):  21 16986

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and LAZARUS, J.

MEMORANDUM BY PANELLA, P.J.:          **FILED: DECEMBER 2, 2022**

Eric Schonewolf ("Father") appeals from the order granting a protection from abuse ("PFA") order in favor of his daughter, E.S. ("Child"),[1] born in May 2016. Father argues that the trial court abused its discretion in admitting Child's out-of-court statements at the PFA hearing under the tender years hearsay exception. We affirm.

---

[1] Here, we will use the parties' names in the caption "as they appeared on the record of the trial court at the time the appeal was taken." Pa.R.A.P. 904(b)(1). Notably, "upon application of a party and for cause shown, an appellate court may exercise its discretion to use the initials of the parties in the caption based upon the sensitive nature of the facts included in the case record and the best interest of the child." Pa.R.A.P. 904(b)(2); **see also** Pa.R.A.P. 907(a). Neither party has applied to this Court for the use of initials in the caption. We will, however, refer to Child by her initials or as "Child" to protect her identity.

Erica Marie Loose ("Mother") and Father, who are the natural parents of Child, divorced in 2021. The parties were granted shared legal custody of Child, Mother was granted primary physical custody and Father was granted partial physical custody every other weekend and four weeks during the summer. Notably, Mother lived in Pennsylvania and Father lived in New Jersey.

In 2021, Mother observed that Child was exhibiting unusual behavior, including having temper tantrums, nightmares, bedwetting, and asking to be bathed before going to Father's home. As a result, Mother consulted with Kailey Esterly, a licensed therapist, who began treating Child. Child subsequently informed Esterly that Father was inappropriately touching her vagina. Because she is mandatory reporter, Esterly informed Berks County Children and Youth Services ("CYS") of the disclosure.

On December 16, 2021, CYS contacted Mother to inform her that it had filed a report on behalf of Child indicating that Father had sexually abused her. After a CYS caseworker interviewed Child, the case was transferred to the New Jersey Division of Child Protection and Permanency ("DCPP"). Joan Quinn, a DCPP caseworker, indicated that Child did not feel safe with Father. The DCPP issued a safety plan and ordered that Father's custody be supervised. Subsequently, an attorney and a physician examined Child. Thereafter, the DCPP issued a recommendation of no contact between Father and Child.

On December 23, 2021, Mother filed a PFA petition against Father on behalf of Child. The trial court held a hearing, at which Mother and Quinn

testified without any objection by Father. Following the hearing, the trial court entered a temporary PFA order for one year against Father.

On February 8, 2022, New Jersey law enforcement informed Father that no criminal charges would be filed, finding that the allegations were not established. As a result, Father filed a petition to modify the PFA order, requesting a dismissal of the PFA because no criminal charges had been filed. Mother filed an answer and counterclaim, arguing that Father's argument was not grounds to modify a PFA order. Mother also filed a motion, requesting the admission of the child's out-of-court statements to Mother and Esterly, under the tender years hearsay exception. The trial court denied the motion without prejudice. Thereafter, Mother filed a petition to extend the PFA order, seeking a three-year PFA order on behalf of Child.

On May 4, 2022, the trial court held an evidentiary hearing, at which Father, Mother, Esterly, and Child's teacher, Rachel Palm, testified. During the hearing, the trial court held an *in camera* hearing with Child, and ruled that Child was unavailable, but that Child's out-of-court statements to Mother and Esterly would be admitted. Ultimately, the trial court found the testimony of Mother and Esterly to be credible and Father to be incredible and issued a final PFA order against Father on behalf of Child for three years. The trial court further articulated that Mother was awarded temporary exclusive custody of Child and Father had no partial physical custody or visitation rights. Father filed a timely appeal and Pa.R.A.P. 1925(b) concise statement.

On appeal, Father raises the following questions for our review:

The court erred and abused its discretion in allowing the minor child's statements in under the Tender Years Exception where:

i. the court failed to conduct an independent, in camera hearing to determine whether the proffered statements were relevant to the proceedings and bore sufficient indicia of reliability;

ii. the minor child did not testify nor did the court specifically hold that the minor child was unavailable to testify; and,

iii. no testimony was presented which provided that having the minor child testify would result in serious emotional distress to the minor child which would have substantially impaired the minor child's ability to reasonably communicate.

Appellant's Brief at 4 (citation omitted).

Father contends that the trial court abused its discretion in admitting Child's out-of-court statements to Mother and Esterly at the PFA hearing. **See id.** at 12. Father argues that the trial court failed to follow the dictates of the tender years hearsay exception to admit the statements. **See id.** at 12-13, 24. More specifically, Father asserts that the trial court failed to assess the relevance and reliability of Child's statements and the unavailability of Child to testify at the hearing, including whether testifying would cause Child serious emotional distress that would substantially impair her ability to communicate reasonably. **See id.** at 15-16, 17, 26-27; **see also id.** at 16 (challenging various statements by Child to Mother and Esterly in which she alleged Father inappropriately touched her vagina). Father further claims that the trial court did not independently review any of the proffered statements, including examining the time, content, and circumstances in which the statements were

made. *See id.* at 17-18. Moreover, Father argues that Child's statements were unreliable, highlighting that the allegations arose from the highly contentious nature of the custody proceedings. *See id.* at 19-21, 28.

Father also claims that the trial court failed to make a finding regarding Child's unavailability to testify at the hearing, as it did not determine that Child would suffer emotional distress that would substantially impair her ability to reasonably communicate. *See id.* at 21-23. Father maintains that although the trial court had an opportunity to observe Child, it made no finding regarding emotional distress. *See id.* at 24. Relatedly, Father contends that Esterly's opinion that Child would not be able to speak at the hearing did not establish emotional distress. *See id.* at 23-24. Father finally emphasizes that the trial court could not consider Child's competency in its application of the tender years exception. *See id.* at 25-29. Father concludes that the final PFA order must be vacated and a new PFA hearing be granted. *See id.* at 12, 29.[2]

> Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

---

[2] We note that the trial court found that Father did not properly preserve his claims due to a vague Rule 1925(b) concise statement, as he did not specifically identify the statements he sought to exclude. *See* Trial Court Opinion, 6/24/22, at 7-9. We decline to find waiver, as Father's claims encompass the trial court's procedure in allowing Child's testimony to be admitted under the tender years hearsay exception. Accordingly, Father properly preserved these claims in his Rule 1925(b) concise statement.

***Commonwealth v. Tyson***, 119 A.3d 353, 357-58 (Pa. Super. 2015) (*en banc*) (citations and quotation marks omitted).

Hearsay is defined as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers into evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). "Hearsay is not admissible except as provided by [the Pennsylvania Rules of Evidence], by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802. The tender years hearsay exception allows for the admission of out-of-court statements relating to sexual abuse made by a child victim who was sixteen years old or younger at the time of the statements to third parties. ***See*** 42 Pa.C.S.A. § 5985.1(a); ***see also Commonwealth v. Walter***, 93 A.3d 442, 451-52 (Pa. 2014).

Relevant to this appeal, a court may admit a child-victim's out-of-court statement for the truth of the matter asserted under the tender years hearsay exception when (1) "the court finds, in an *in camera* hearing, that the evidence is relevant and that the time, content[,] and circumstances of the statement provide sufficient indicia of reliability;" and (2) the child "is unavailable as a witness." 42 Pa.C.S.A. § 5985.1(a)(1)(i), (ii)(B).

The statute requires "indicia of reliability," which compels courts to look to "the spontaneity of the statements, consistency in repetition, the mental state of the declarant, use of terms unexpected in children of that age, and the lack of a motive to fabricate." ***Interest of D.C.***, 263 A.3d 326, 335 (Pa.

Super. 2021) (citation omitted). "[A] trial court must consider the totality of the circumstances when determining whether a child's out-of-court statement is trustworthy." *Id.* (citation omitted); *see also Commonwealth v. Delbridge*, 855 A.2d 27, 45 (Pa. 2003) (noting that the admissibility of out-of-court statements under the tender years hearsay exception "is determined by assessing the particularized guarantees of trustworthiness surrounding the circumstances under which the statements were uttered to the person who is testifying.").

Moreover, to make a finding "that the child is unavailable as a witness, the court must determine, based on evidence presented to it, that testimony by the child as a witness will result in the child suffering serious emotional distress that would substantially impair the child's ability to reasonably communicate." 42 Pa.C.S.A. § 5985.1(a.1). In making this finding, the trial court may "[o]bserve and question the child, either inside or outside the courtroom." *Id.* § 5985.1(a.1)(1). Trial courts may also rely on testimony "of a parent or custodian or any other person, such as a person who has dealt with the child in a medical or therapeutic setting." *Id.* § 5985.1(a.1)(2).

Here, the trial court held an *in camera* hearing with Child, and thereafter stated the following:

> The record should reflect I briefly spoke to [Child]. I find that pursuant to Rule 601 of the Pennsylvania Rules of Evidence, [Child] is minimally competent. She is very young. She is five years old. She will turn six next week. She does know when her birthday is. She was largely not communicative in the sense that she did not speak; she simply nodded or shook her head.

- 7 -

With regard to her father, she clearly stated that she does not want to see him.... I asked her — I said if I asked her anything that made her uncomfortable, to let me know. And she looked at me, clearly not understanding what I said, so I asked her again. I asked her do you know what comfortable means, and she said she did not. So I asked her, I said to her if I asked her something that she does not want to answer, that she can tell me that. So going back to it, I asked her whether she wanted to see her father again, and she said no. I asked her if she wanted to tell me what happened — if she would tell me what happened, and she looked at me, she cocked her head to the side and down and spoke very softly and said, I don't want to answer that question. So I did not push her. In light of these circumstances, I find that the hearsay testimony of the Tender Years applies.

N.T., 5/4/22, at 114-15; *see also* N.T. (*in camera* hearing), 5/4/22, at 2-9.

Further, Esterly testified that she is Child's therapist. **See** N.T., 5/4/22, at 88. Esterly stated that Child does not like talking about Father and particularly does not talk to anyone who she does not know about Father. **See id.** at 96; **see also id.** at 107 (wherein Esterly stated that Child would not disclose the incidents to the trial court). Esterly indicated that Mother was not coaching Child, noting that Child used age-appropriate words when describing the incidents. **See id.** at 97. More specifically, Esterly testified that Child stated that Father touched her vagina and that she does not like it. N.T., 5/4/22, at 99-100, 101, 104; **see also id.** at 96 (stating that Child does not want to see Father).

Mother testified that Child told her that Father touches her vagina inappropriately. **See** N.T., 5/4/22, at 115. Mother testified that Child's statements in this regard were spontaneous, as Child disclosed them while in

the bathtub and playing a boardgame, without Mother's prompting. *See id.* at 115, 117-18. Mother indicated that Child's behavior changed, including having inconsolable temper-tantrums, bed-wetting, and picking at her own skin, and Child would have Mother bathe her before she would have to go to Father's home. *See id.* at 67-68, 69-70, 72-73, 115-16. Mother stated that Child's statements in this regard were consistent, and that Child was afraid of Father. *See id.* at 118-19; *see also* N.T., 1/6/22,[3] at 25 (wherein Quinn observed that Child's disclosures have been consistent).

Initially, although Father correctly points out that the trial court's finding that Child was mildly competent to testify is a distinct issue from the admissibility of out-of-court statements under the tender years hearsay exception, *see Walter*, 93 A.3d at 452, we do not find an abuse of discretion, as the trial court did not rely solely on Child's lack of competency in determining admissibility under the tender years hearsay exception. *See Interest of D.C.*, 263 A.3d at 334. Here, the trial court conducted an *in camera* hearing with Child, found Child's statements to be relevant and reliable, and found Child was unavailable as a witness at the hearing. *See* 42 Pa.C.S.A. § 5985.1(a)(1), (a.1).

More specifically, the trial court found that the testimony was relevant, "as it bore directly upon the allegations against Father." Trial Court Opinion,

---

[3] The trial court took judicial notice of the January 6, 2022 proceedings at the May 4, 2022 hearing. *See* N.T., 5/4/22, at 41, 85, 130-31.

6/24/22, at 18; *see also Commonwealth v. Lyons*, 833 A.2d 245, 255-56 (Pa. Super. 2003) (finding child victim's out-of-court statements describing attack was relevant testimony and admissible under the tender years hearsay exception). Furthermore, the trial court properly considered the trustworthiness of Child's out-of-court statements, noting the spontaneity of her statements, her consistency in making the statements, her use of age-appropriate terms, and her lack of a motive to fabricate. *See Interest of D.C.*, 263 A.3d at 335-36 (concluding that child victim's out-of-court statements were reliable because her statements were spontaneous and spoken in her own words and made without any motive to fabricate the allegations); *Commonwealth v. Strafford*, 194 A.3d 168, 174 (Pa. Super. 2018) (noting that child's out-of-court statements to family members and therapist were reliable, as the statements were spontaneous and consistent, and child had not motive to fabricate).

The trial court also found Child to be unavailable for the hearing based upon the "harm that would be caused to [Child] if an attempt were made to compel her to testify." Trial Court Opinion, 6/24/22, at 19. Indeed, the trial court noted that Child was noncommunicative, she lowered her head and became sullen when asked about Father, and she did not want to speak about what happened with Father. *See id.* at 20. Moreover, Esterly and Mother credibly testified that Child would not speak with the court and Child was upset. *See Ferko-Fox v. Fox*, 68 A.3d 917, 927 (Pa. Super. 2013) (noting

that this Court must defer to the trial court's credibility determinations). Therefore, based upon the trial court's own observations in conjunction with the credible testimony of Esterly and Mother, we conclude that the trial court did not abuse its discretion in finding that Child was unavailable for the hearing pursuant to the tender years hearsay exception. *See Interest of D.C.*, 263 A.3d at 333-34 (concluding that the trial court did not abuse its discretion in finding that child was unavailable under the tender years exception based upon testimony from Mother and two other custodians, and the court's observations of victim). Accordingly, we conclude that the trial court properly admitted Child's out-of-court statements under the tender years hearsay exception.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/2/2022