J-A11027-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
      v.   :
  :
  :
  :
BRIAN SCOTT CINKO   :
  :
     Appellant   :   No. 833 WDA 2022

Appeal from the Judgment of Sentence Entered March 10, 2022
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0000074-2020

BEFORE:   BENDER, P.J.E., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:         **FILED: August 4, 2023**

Appellant, Brian Scott Cinko, was convicted following a three-day jury trial of thirty-two various sexual crimes against an eight-year-old boy over a period of approximately two months. He was subsequently sentenced to an aggregate term of 84.5 to 189 years of incarceration. Appellant's issues on appeal all concern his assertion that the victim was not competent to testify. We affirm.

S.W. and her husband, J.W., were parents to two children: A.W., the victim in this case, and his sister, B.W. In early 2019, the family moved from Arizona to Pennsylvania. In September, the family moved in with S.W.'s nephew, who worked with both Appellant and S.W. A few weeks later, the family moved into Appellant's apartment, intending to take it over a few days

_____

[*] Retired Senior Judge assigned to the Superior Court.

later as Appellant was set to move elsewhere.  Appellant did not follow through with that plan and stayed with the family approximately sixty days.

The parents initially slept on a couch in the living room while their children slept in loft beds in one of the apartment's bedrooms, with Appellant's bedroom across the hallway.  Appellant would occasionally volunteer to watch the children if S.W. and J.W. needed to go somewhere.  Appellant "started buying [A.W.] stuff[,] and [S.W. and J.W.] started to feel a little bit alarmed by it."  N.T. Trial, 12/7/21, at 53 (testimony of S.W.).  This included small gifts such as a Halloween costume and candy.  Appellant did not buy similar gifts for their daughter.  Appellant would also regularly have "movie night" in his bedroom with A.W.

One evening, B.W. woke her parents up sometime around midnight, reporting that A.W. was preventing her from sleeping.  S.W. decided to check on A.W. and saw Appellant in bed with A.W., with Appellant wearing only underwear.  S.W. reported this behavior to A.W.'s doctor, who told them to report the incident to the Office of Children, Youth and Family ("CYF").  Caseworkers from that agency arranged for a "rollout" interview on November 19, 2019, at the Children's Advocacy Center ("CAC"), which "typically happens when there is not an allegation of abuse but there may be some outside source or some reason for somebody to suspect that something could have occurred…."  N.T. Trial, 12/6/21, at 110.  When the forensic interviewer asked A.W. who he lived with, his answer included "[Appellant], but he moved."  Transcript of Forensic Interview, 11/19/19, at 17.  The interviewer asked,

- 2 -

"How come he moved?" and A.W. replied, "So my mom and my dad kicked him out because he was doing like weird stuff. … He has been touching me and he's been telling me to touch him and I'm saying no…." *Id.* at 18. He said that Appellant touched him "every single night" after going to bed. *Id.* at 19. Appellant would "put[] his finger in … my butt," *id.* at 36, as well as "the thing that I said if you have to go pee," which A.W. said referred to Appellant's "wiener." *Id.* at 39. A.W. also disclosed incidents of oral sex, including graphic descriptions of ejaculation. A.W. stated that these incidents happened more than twenty times. As a result of these disclosures, Detective David Hoover of the Logan Township Police Department was summoned to the facility. He took a copy of the interview, questioned family members, and filed charges against Appellant two days later. At trial, the Commonwealth consolidated the charges.[1]

On September 14, 2020, Appellant filed a motion to determine A.W.'s competency, arguing that his trial testimony would be tainted. The concept of taint addresses the theory that a "child's memory is peculiarly susceptible to suggestibility" and probes whether the child's memory is false or has been distorted by suggestive interview techniques. *Commonwealth v. Delbridge*, 855 A.2d 27, 35 (Pa. 2003) ("*Delbridge I*"). Appellant argued that several comments from the CAC interview established that A.W. made

---

[1] The Commonwealth consolidated various charges based on A.W.'s statements that the incidents happened at least twenty times. Appellant does not raise any issues with respect to the charges or their consolidation.

the accusations due to his parents' planting the idea in his head. For example, Appellant pointed out that, in the interview, A.W. "refers to [Appellant] having a criminal past," including saying that Appellant "did it to a 13-year-old girl[.]" Motion to Determine Competency, 9/14/20, at ¶¶ 26; 29.[2] Appellant cited other portions of the transcript which, in his view, established that A.W. was incapable of distinguishing fact from fiction.

On September 23, 2020, the trial court held a hearing on the motion and conducted an *in camera* examination of A.W. As relevant to Appellant's arguments, A.W. discussed two incidents involving wild animals. The first was A.W.'s claim that he threw "a stick up in the air and knock[ed] out a squirrel" that had been eating a nut. N.T. Competency Hearing, 9/23/20, at 51. The second concerned a wild deer A.W. befriended in Arizona, which he named George. A.W. stated he would put stickers on George's head "so I could remember [what] he looks like." *Id.* at 53-54. A.W. stated that he did not try to make friends with deer in Pennsylvania because "[t]hey're weird. They … just stare and … run the other way…." *Id.* at 58.

The trial court issued an order and opinion in support of its conclusion that Appellant failed to meet his burden to demonstrate that A.W. was not competent to testify. Appellant was convicted and sentenced to an aggregate term of 84.5 to 189 years of incarceration. He filed a timely motion

---

[2] Appellant pled guilty in 1994 to involuntary deviate sexual intercourse based on sexual abuse of a twelve-year old male. The trial court denied the Commonwealth's motion to introduce this conviction pursuant to Pa.R.E. 404(b).

- 4 -

challenging the sufficiency of the evidence and the weight of the evidence supporting the verdict, which the court denied. *See* Pa.R.Crim.P. 606(A)(6); 607; 720(B). Appellant filed a timely notice of appeal and complied with the order to file a Pa.R.A.P. 1925(b) concise statement. Appellant lists three issues for our review:

> I. Whether the trial court erred in denying … [A]ppellant's motion for judgment of acquittal where the jury's guilty verdict was based entirely on the uncorroborated testimony of an eight-year-old alleged victim (ten at time of trial) who lacked testimonial competency, as demonstrated by the court's finding that the child demonstrated a propensity to make fantastical statements "not grounded in apparent reality and to self-contradict and forget[?]"
>
> II. Whether the trial court erred in denying … [A]ppellant's motion for judgment of acquittal and motion for [a] new trial where the incompetence of the child witness foreclosed … [A]ppellant, a criminal defendant, from an opportunity for effective and meaningful cross examination on the details of the criminal allegations and, thereby, deprived him of his 6th [A]mendment[,] constitutionally guaranteed rights to confront his accuser[?]
>
> III. Whether the trial court erred in denying … [A]ppellant's motion for new trial where the jury's guilty verdict is based solely on the uncorroborated testimony of a child who is not competent to testify and where, as a result, the verdict is not based on competent, credible evidence, but is, instead, the product of emotion and sympathy to a degree that "shocks one's sense of justice[?]"

Appellant's Brief at 13-14 (unnecessary capitalization omitted).

Initially, we note that Appellant's brief fails to comply with Pa.R.A.P. 2119(a), which states that the "argument shall be divided into as many parts as there are questions to be argued…." Despite presenting three issues for our review, the argument section of his brief is divided into two headings: "Motion for judgment of acquittal – sufficiency of the evidence" and "Motion

- 5 -

for new trial – weight of the evidence." At bottom, each of the three issues presented reduces to the assertion that A.W. was not competent to testify, and the trial court erred in ruling otherwise. Appellant's three issues all cite slightly different results of the purported error: incompetent testimony cannot produce sufficient evidence to convict; an incompetent witness violates a defendant's confrontation rights; and testimony by an incompetent witness leads to a verdict not supported by the weight of the evidence as the jury's verdict must be due to sympathy for the child victim. Because all three of these claims turn on the trial court's competency decision, we address them together.

Competency is addressed within Pa.R.E. 601, stating:

**(a) General Rule.** Every person is competent to be a witness except as otherwise provided by statute or in these rules.

**(b) Disqualification for Specific Defects.** A person is incompetent to testify if the court finds that because of a mental condition or immaturity the person:

(1) is, or was, at any relevant time, incapable of perceiving accurately;

(2) is unable to express himself or herself so as to be understood either directly or through an interpreter;

(3) has an impaired memory; or

(4) does not sufficiently understand the duty to tell the truth.

Pa.R.E. 601(a), (b).

Child witnesses are an exception to the presumption of competency, as hearings must be held for any child witness under the age of fourteen.

- 6 -

*Commonwealth v. Moore*, 980 A.2d 647, 651 (Pa. Super. 2009).  In *Rosche v. McCoy*, 156 A.2d 307 (Pa. 1959), the Supreme Court of Pennsylvania held that the following prongs must be met for a child to testify:

> There must be (1) such capacity to communicate, including as it does both an ability to understand questions and to frame and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remembering what it is that [he or] she is called to testify about and (3) a consciousness of the duty to speak the truth.

*Id.* at 310.  Where the defendant alleges taint, that allegation is made part of the competency hearing.  *Delbridge I*, 855 A.2d at 40.

To properly address Appellant's claims, we first discuss the admission of A.W.'s CAC statement under the Tender Years Hearsay Act ("TYHA"), 42 Pa.C.S. § 5985.1.  As relevant here, the TYHA permits the introduction of an "out-of-court statement made by a child victim or witness, who at the time the statement was made was 16 years of age or younger," describing certain offenses including the ones at issue herein, provided that the trial court "finds, in an *in camera* hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability[.]"  42 Pa.C.S § 5985.1(a)(1)(i-ii).  The trial court granted the Commonwealth's motion *in limine* to introduce substantial portions of the conversation recorded at the CAC facility under this statute.[3]

The Commonwealth called A.W. on direct examination and the testimony largely centered on competency issues, like whether A.W. could

---

[3] The Commonwealth agreed to remove certain portions of the interview.

- 7 -

answer questions about himself, the importance of telling the truth, and distinguishing between real life and fictional portrayals (*e.g.*, "And Batman[:] is … he real or is he make-believe?"). N.T. Trial, 12/6/21, at 98. With respect to Appellant's criminal charges, A.W. stated that Appellant touched "every single potty area," which A.W. said meant the "[p]ee and poop area." *Id.* at 101. The specific accusations were largely established by the CAC interview, which was approximately 1 hour and 45 minutes in length, as the discussion of Appellant's conduct on direct examination comprised four pages of transcript.

Appellant had previously requested to "defer my cross[-]examination of [A.W.] until after the jury has heard all of his testimony and let's face it, that's what the CAC interview was." *Id.* at 30. Consistent with this choice, Appellant cross-examined A.W. after the videotape was played to the jury. His cross-examination also focused on competency issues in lieu of questions about the abuse itself.[4] Among other points, Appellant asked several questions about George the deer, and A.W. stated that he had freed George

---

[4] As stated in the factual history section *supra*, A.W.'s family stayed with his uncle shortly before moving into Appellant's apartment. Like Appellant, A.W.'s uncle had been previously convicted of sexual offenses. Following extensive argument on the issue, the trial court permitted Appellant to ask Detective Hoover if he had investigated A.W.'s uncle.

During closing argument, Appellant argued that, "[u]nfortunately, this boy was abused somewhere in the past. But it wasn't by [Appellant]. … You also know that [A.W.] was family [*sic*] for at least two weeks with a registered child sex offender. … No, I am not saying he did it. I don't know that and either [*sic*] do you. But I would have liked to have that lead followed up on and investigated and it wasn't." N.T. Trial, 12/8/21, at 124-25.

from a bear trap. A.W. stated that he calmed George down with some corn on the cob and then released the trap with a shovel. A.W. insisted that these incidents were real.

On appeal, Appellant generally maintains that A.W.'s statements were fantastical to the degree he was denied his ability to confront A.W. at trial. He insists that, "because of the incompetency of the alleged victim, … Appellant was foreclosed from meaningful cross examination on the details of the criminal allegations and was, therefore, deprived of his constitutionally guaranteed right to confront his accuser." Appellant's Brief at 18. Appellant maintains that "simply because cross[-]examination was available to … Appellant does not mean … Appellant could engage in a thoughtful exchange with … Appellant [*sic*]. Cross[-]examination does not cure incompetency." *Id.* at 21.

"[T]he right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him. And probably no one, certainly no one experienced in the trial of lawsuits, would deny the value of cross-examination in exposing falsehood and bringing out the truth in the trial of a criminal case." *Pointer v. Texas*, 380 U.S. 400, 404 (1965). As it pertains to the admission of the TYHA statements, prior to 2004, introducing hearsay statements from unavailable witnesses was deemed not to violate the right of confrontation provided the statements bore "adequate 'indicia of reliability.'" *Ohio v. Roberts*, 448 U.S. 56, 66 (1980), *abrogated by Crawford v. Washington*, 541 U.S. 36 (2004). Under *Roberts*, the

reliability of a statement was established if it fell "within a firmly rooted hearsay exception" or if the statement had "particularized guarantees of trustworthiness." *Id.* *Crawford* overruled *Roberts'* Confrontation Clause analysis. Statements admitted under the TYHA do not run afoul of *Crawford* provided that the statements are non-testimonial. *Commonwealth v. Allshouse*, 36 A.3d 163, 173 (Pa. 2012). If non-testimonial, traditional evidentiary rules developed by the States governing the admission of hearsay apply, as the Confrontation Clause does not apply to non-testimonial hearsay. *Id.*

Because A.W. was called at trial and subjected to cross-examination, the core requirement that the witness be available was satisfied, making irrelevant whether the statements were testimonial. However, Appellant maintained below that the Commonwealth's TYHA motion should have been denied due to the allegation of incompetency. *See* Response to Commonwealth's Motion *in Limine*, 11/24/20, at 6 ("Incompetent testimony cannot be transformed into competent testimony through application of the [TYHA]."). In his view, "the underlying competency of a child witness must be a consideration" when admitting TYHA hearsay. *Id.* at 7. Appellant alludes to a conclusion that A.W. was in fact unavailable at trial, notwithstanding his physical presence, due to his purported incompetency. In turn, he argues that this incompetency likewise bore on the reliability of his TYHA statements. *See* 42 Pa.C.S. § 5985.1(a)(1)(i) (instructing court to determine if the "time,

- 10 -

content and circumstances of the statement provide sufficient indicia of reliability").

We disagree. Appellant attempts to transform the standard of review for competency questions from an abuse of discretion into a question of law based on a *de novo* review of the witness' credibility. Caselaw is clear that credibility is not a component of the competence assessment, and that the trial court's decision is reviewed for an abuse of discretion.

In **Delbridge I**, our Supreme Court authorized a pre-trial hearing to determine whether a child's testimony would be tainted by extrajudicial influence. The victims in that case were four and six years old at the time of the crimes, and Delbridge sought a competency hearing on the grounds that their memory had been tainted by suggestive interviewing. The trial court held a hearing but limited it to "questions examining the ability of the children to understand the difference between truth and non-truth, the general capacity to remember and the ability to communicate that memory." **Delbridge I**, 855 A.2d at 33. The **Delbridge I** Court concluded that a pre-trial hearing on competency is the proper mechanism for assessing potential taint. In terms of the **Rosche** factors, "[t]aint speaks to the second prong," and relates to whether the witness has the capacity to remember the subject of their testimony. *Id.* at 40. The decision set forth additional procedural standards, such as imposing the burdens of production and persuasion on the moving party, establishing a clear and convincing standard, and granting the trial court discretion to permit expert testimony.

The ***Delbridge I*** Court made clear that competency and credibility are two separate considerations. "A competency hearing is not concerned with credibility. Credibility involves an assessment of whether or not what the witness says is true; this is a question for the fact finder." ***Id.*** (quoting ***Commonwealth v. Washington***, 722 A.2d 643, 646 (Pa. 1998)). The Court retained jurisdiction and affirmed after the trial court determined that the children were competent following an evidentiary hearing. ***Commonwealth v. Delbridge***, 859 A.2d 1254 (Pa. 2004) ("***Delbridge II***"). The ***Delbridge II*** Court assessed the court's ruling for an abuse of discretion. "Each child demonstrated the basic ability to communicate, to understand questions, and provide appropriate responses, to observe and recall an event, to differentiate between reality and make-believe, and to understand the consequences of telling a lie." ***Id.*** at 1258. Delbridge cross-examined the witnesses and "was given great latitude in his questioning of [the victims] regarding the memories of each child as to the interview process, their interactions with the various interviewers, and any influence their mother exercised over them during the investigation." ***Id.*** Delbridge "failed to elicit any testimony from the children" supporting his assertion of taint. ***Id.***

We find that the trial court did not abuse its discretion, as A.W. gave answers that satisfied each prong of ***Rosche***. In its March 22, 2021 order and opinion deeming A.W. competent, the trial court set forth its conclusions. The trial court agreed that Appellant did advance some evidence of taint, as the CAC interview showed that, at times, A.W. indicated that he learned about

- 12 -

Appellant's history of abuse from his parents. However, the court concluded that Appellant failed to overcome the presumption of competency as required by **Delbridge I**. Beginning with whether A.W. exhibited an understanding of the need to tell the truth, A.W. testified that he understood the importance of telling the truth, that telling the truth was good, and that telling a lie is bad. A.W. correctly demonstrated that he knew the difference between the truth and a lie based on questions by the assistant district attorney, who asked him if it would be a lie if she said her shirt was purple. A.W. correctly responded that it would be a lie because her shirt was yellow. A.W. also demonstrated that he could cogently respond to questions about himself, as he knew his birthdate, how old he was, his family members, and could discuss activities that he enjoyed. In ruling on a competency motion, we defer to the trial court's assessment as it observed the witness' demeanor and responses firsthand. **See Commonwealth v. Dowling,** 883 A.2d 570, 577 (Pa. 2005) ("[A] trial court can base its competency determination on criteria other than specifically-targeted questions, criteria such as the witness's demeanor, alertness, thoughtfulness, sincerity and general responses and testimony."). On these **Rosche** factors, the trial court clearly did not abuse its discretion.

The trial court acknowledged that regarding "the minimal capacity … to communicate, to observe an event, and to accurately recall that observation, the record is less clear." Order and Opinion, 3/19/22, at 25. While A.W. "had no problem communicating," his ability to observe and accurately recall "is clouded by his propensity, demonstrated in all interviews, to make fantastical

- 13 -

statements not grounded in apparent reality, and to volunteer reams of information, and to self-contradict or forget." *Id.* By way of example, A.W. began his CAC interview "with a long and garbled description of flag football," and in follow-up comments, "it was not clear whether [A.W.] understood the rules of flag football ... or was being responsive to the interviewer's questions." *Id.* at 26. The trial court also cited the stories about George the deer, implicitly concluding that the story was not real. Simultaneously, A.W. exhibited that he could distinguish fact and fantasy. He identified Darth Vader as a "make believe" character and identified the judge as a real person. He also described his favorite video game, and correctly explained that the vehicles in the game were not themselves real, but were modeled after real cars.

Notwithstanding these issues, the trial court ultimately concluded that Appellant failed to meet his burden and that A.W. was minimally competent. The court opined that the fantastical aspects of A.W.'s testimony bore only on his credibility and could be explored on cross-examination. It reasoned that "[Appellant] will have ample opportunity and abundant material with which to challenge the child witness's credibility, including his fantastical statements and his self-contradiction and forgetting in regards to the basic allegations of offenses allegedly committed against him." *Id.* at 32.

In assailing the trial court's ruling, Appellant asks us to focus on the trial court's acknowledgement that A.W. made statements not grounded in reality. According to Appellant, the court's finding in that regard means that A.W. was

not competent to testify as a matter of law. Appellant specifically focuses on A.W.'s comments about George the deer, which he repeated at trial on cross-examination, as demonstrating that A.W. should be deemed incompetent.

The trial court clearly determined that A.W. demonstrated some inability to separate fact from fiction. This finding is supported by the record, and we agree that it is difficult to believe that a wild deer allowed A.W. to put a sticker on its forehead or remove a bear trap from its leg, even accepting that a small child could pry such a trap open. However, we agree with the trial court that these issues ultimately go to credibility, not competency, and caselaw establishes that competency determinations have been upheld notwithstanding a child's testifying to matters that are highly implausible. The *Delbridge II* Court determined that the trial court did not abuse its discretion in deeming the witness competent, even though one of the victims claimed that when Delbridge "touched her 'tee-tee' she could not tell anyone because she was still in diapers." *Delbridge I*, 855 A.2d at 31. As Delbridge argued, "this statement creates the incredible inference that [the victim] could recall events that occurred while she was an infant." *Id.* Our Supreme Court did not find that this type of implausible detail established, as a matter of law, an incompetence to testify. Instead, the trial court retained discretion to determine that, on balance, the witness satisfied the criteria for competency. The case for overruling the trial court's discretionary assessment is even weaker here because, unlike in the *Delbridge* cases, the implausible aspects

of A.W.'s statements are orthogonal to the allegations of abuse. We therefore conclude that the court did not abuse its discretion.

The same analysis applies to the admission of the TYHA statements and the trial court's finding that those statements satisfied the statutory criteria for reliability, assuming that Appellant adequately preserved a challenge to the TYHA statements via his Confrontation Clause claims.[5] In **Commonwealth v. Walter**, 93 A.3d 442 (Pa. 2014), the Supreme Court held that the competency of a witness does not bear on the admissibility of statements under the TYHA. The victim, the four-year-old daughter of the defendant, informed a CYS caseworker that she was afraid of her father because of "Chuckie," a name she used to refer to his penis. The victim was placed in emergency foster case and subsequently made allegations of abuse to four other witnesses.

During an *in camera* hearing concerning her competency taking place before the preliminary hearing, the victim, then age five, "appeared to give appropriate answers" to basic numbers about her age and name. *Id.* at 446. "However, when the Commonwealth asked the victim various questions related to her understanding of truth and lies, the victim gave a number of nonsensical or bizarre answers." *Id.* The trial court deemed the victim

_____

[5] Appellant does not separately challenge the admission of the TYHA statements. The Commonwealth does not argue that Appellant has waived any of his claims. Because the admission of the TYHA statements formed the basis for Appellant's convictions, and the cross-examination of A.W. was based on the playing of the tape, we accept for purposes of our disposition that Appellant has not waived his Confrontation Clause claims.

- 16 -

competent to testify but unavailable for purposes of the TYHA "because testifying would cause her serious emotional distress that would substantially impair her ability to reasonably communicate to the jury." *Id.* at 447. At the subsequent preliminary hearing, the court called the victim to testify outside the defendant's presence, and deemed the victim incompetent to testify based on her answers. The Superior Court held that the child must be deemed competent to testify before admitting statements under the TYHA.

Our Supreme Court granted the Commonwealth's petition for review and reversed. The Court explained the need "to recognize the difference between the two legal concepts" at issue: competency and the TYHA hearsay exception. *Id.* at 451. Competency "is not concerned with credibility. Credibility involves an assessment of whether or not what the witness says is true." *Id.* Competency thus simply "pertains to a witness's capacity to testify," whereas the hearsay exception requires "assessing the particularized guarantees of trustworthiness surrounding the circumstances under which the statements were uttered to the person who is testifying." *Id.* (quoting *Delbridge I*, 855 A.2d at 45).

Appellant does not specifically challenge the trial court's determination that the TYHA statements satisfied the "sufficient indicia of reliability" statutory standard. He instead argues that the two are not easily separated, and points to the trial court's concession that A.W. had some difficulty distinguishing fact from fiction. Setting aside the fact that Appellant does not specifically allege that A.W. was unavailable due to this purported

- 17 -

incompetency, Appellant fails to elaborate upon his claim that his Confrontation Clause rights were violated. A.W. testified at trial and was subject to cross-examination and was therefore available at trial. The right to confront accusers is a procedural guarantee, not a substantive one. "[T]he Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." ***Crawford***, 541 U.S. at 61. A.W. was subject to cross-examination, and Appellant does not provide any authority for the proposition that the actual opportunity to confront A.W. is insufficient even if we accept *arguendo* that A.W.'s inability to separate fact and fiction in some instances does bear on the reliability of the disclosures.[6]

> The Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving

---

[6] Then-Justice Saylor authored a concurring opinion in ***Walter***, highlighting that the TYHA "does not speak in terms of 'particularized guarantees,' but whether the time, content, and circumstances of the statement provide sufficient indicia of reliability," and argued that the framework developed by the United States Supreme Court in ***Idaho v. Wright***, 497 U.S. 805 (1990), which addressed the admissibility of statements from incompetent witnesses under the now-abrogated ***Roberts*** framework, should not be incorporated wholesale into the TYHA. ***Walter***, 93 A.3d at 458 (Saylor, J., concurring).

Justice Saylor also argued that competency to testify and the indicia of reliability assessment for hearsay statements under the TYHA can be interrelated. "To the extent the alleged victim has a generalized difficulty distinguishing fiction from reality, or believes it is normal and acceptable to lie, the reliability of his or her prior hearsay statements is called into question, as such statements may be the product of imagination or creativity." ***Id.*** at 457.

testimony that is marred by forgetfulness, confusion, or evasion. To the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony.

*Delaware v. Fensterer*, 474 U.S. 15, 21–22 (1985). *Cf. Kentucky v. Stincer*, 482 U.S. 730, 744 (1987) (concluding that exclusion from competency hearing adjudging witnesses competent to testify did not violate Confrontation Clause; "the critical tool of cross-examination was available to counsel as a means of establishing that the witnesses were not competent to testify, as well as a means of undermining the credibility of their testimony").

Therefore, while A.W. demonstrated some degree of unreliability in distinguishing fact from fiction, we agree with the trial court that Appellant's ability to cross-examine on those topics and argue the issue to the jury sufficiently satisfied his right to confront A.W. The trial court did not limit Appellant's cross-examination in any way, and he argued to the jury in closing that A.W.'s grasp on what was real and what was not was so tenuous that the jury should find Appellant not guilty. N.T. Trial, 12/8/21, at 127 ("And the fact is that [A.W.] has no grasp o[n] reality. … [W]ho among you would convict [Appellant] knowing what you now know about [A.W.]'s capacity to issue fantastical statements[?]"). We therefore find no violation of Appellant's right to confront A.W.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/4/2023